UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

DANIEL P. D'ANTONIO, et al,

                                   Plaintiffs,

          - against -

METROPOLITAN TRANSPORTATION
AUTHORITY, TRANSPORT WORKERS UNION OF          2006 Civ. 4283 (KMW) (JCF)
AMERICA, AFL-CIO, LOCAL 100, and ROGER
TOUSSAINT as President of Transport Workers Union
Local 100, JOHN DOE and JANE DOE and other
persons to be named later as officials of Transport
Workers Union, AFL-CIO, Local 100,

                                   Defendants.

------------------------------------------------------------------x


**METROPOLITAN TRANSPORTATION AUTHORITY's**

**MEMORANDUM IN SUPPORT OF ITS**

**MOTION TO DISMISS**


JAMES  B. HENLY
General Counsel for the
Metropolitan Transportation Authority
347 Madison Avenue, 9th Floor
New York, NY 10017

BY: Ching Wah Chin
Associate Counsel (CC 2850)
(212) 878-1037

of counsel,
Ching Wah Chin

# Contents

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

POINT I        PLAINTIFFS FAILED TO EXHAUST
               MANDATORY GRIEVANCE PROCEDURES
               FOR PLAINTIFFS' CLAIMS WHICH ALL ARISE
               FROM ALLEGED BREACHES OF
               COLLECTIVE BARGAINING AGREEMENTS . . . . . . . . . . . . . . . . 6

POINT II       ALL OF PLAINTIFFS' CAUSES OF ACTIONS
               AGAINST THE MTA FAIL TO STATE A CLAIM . . . . . . . . . . . . . . 8

        a.     Plaintiffs' Breach of Contract Claims Against the MTA Must Be Dismissed . . . 8

               i.     Plaintiffs failed to fulfill conditions
                      precedent for a breach of contract claim . . . . . . . . . . . . . . 8

               ii.    Plaintiffs failed to state any claim for a
                      breach of the Collective Bargaining Agreements . . . . . . . . . . . 12

        b.     Plaintiffs' Other Common Law Claims
               Against the MTA Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . 12

        c.     Plaintiffs' Statutory Claims
               Against the MTA Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . 14

        d.     Plaintiffs' Fraud and Conspiracy Claims
               Against the MTA Must Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . 15

POINT III      PLAINTIFFS' REMAINING CLAIMS
               ALSO MUST BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

POINT IV       CLAIMS AGAINST THE MTA MUST
               BE DISMISSED BECAUSE THE MTA
               IS THE WRONG PARTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Appendix

i

<u>Table of Authorities</u>

*Adams v. New York City Transit Auth.,*
    140 A.D.2d 572, 528 N.Y.S.2d 638 (2d Dep't 1988)) . . . . . . . . . . . . . . . . . 18
*Alaimo v. State Univ. of New York,* No. 97-CV-0285E(H),
    1997 U.S. Dist. LEXIS 13074 (W.D.N.Y. Aug. 29, 1997) . . . . . . . . . . . . . . 9
*Amadasu v. Ngati,* No. 05 Civ. 2585,
    2006 U.S. Dist. LEXIS 19654, 2006 WL 842456 (E.D.N.Y. Mar. 27, 2006) . . . . . . 13
*Angola v. Civiletti,* 666 F.2d 1 (2d Cir. 1981) ) . . . . . . . . . . . . . . . . . . . . . . 16
*Baumgart v. Stony Brook Children's Serv.,* No. 03-CV-5526,
    2006 U.S. Dist. LEXIS 45757 (E.D.N.Y. July 6, 2006) . . . . . . . . . . . . . . . 12
*Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J.,* 448 F.3d 573 (2d Cir. 2006) . . 12
*Blackmon v. UNITE!,* No. 03 Civ. 9214,
    2005 U.S. Dist. LEXIS 18004, 2005 WL 2038482 (S.D.N.Y. Aug. 25, 2005) . . . . . . 7
*Board of Education v. Ambach,* 70 N.Y.2d 501, 517 N.E.2d 509, 522 N.Y.S.2d 831 (1987),
    *cert. denied, Margolin v. Board of Education*, 485 U.S. 1034 (1988) . . . . . . . . 6, 7, 8
*Bowles v. New York City Transit Auth.,* No.'s 00 Civ. 4213, 03 Civ. 3073,
    2006 U.S. Dist. LEXIS 32914 (S.D.N.Y. May 23, 2006) . . . . . . . . . . . . . . 187
*Brown v. County of Nassau,* 288 A.D.2d 216, 217, 733 N.Y.S.2d 107 (2d Dep't 2001) . . . . . 7
*Buffalo Police Benevolent Ass'n v. N.Y. State Pub. Empl. Rels. Bd.,*
    286 A.D.2d 993, 730 N.Y.S.2d 820 (4th Dep't 2001) . . . . . . . . . . . . . . . 11
*Buffalo Teachers Federation, Inc. v. Helsby,* 515 F.Supp. 215 (S.D.N.Y. 1981),
    *aff'd*, 676 F.2d 28 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . 11
*CAMOFI Master LDC v. College P'ship,* 452 F.Supp.2d 462 (S.D.N.Y. 2006) . . . . . . 15, 18
*Cespuglio v. Ward,* No. 03 Civ. 8603,
    2004 U.S. Dist. LEXIS 8586, 2004 WL 1088235 (S.D.N.Y. May 12, 2004) . . . . . . 7
*Chubb & Son, Inc. v. Kelleher,* No.'s 92 CV 4484, 95 CV 951,
    1998 U.S. Dist. LEXIS 22542 (E.D.N.Y. Feb. 26, 1998) . . . . . . . . . . . . . 13, 16
*Chupka v. Lorenz-Schneider Co.,* 12 N.Y.2d 1, 186 N.E.2d 191, 233 N.Y.S.2d 929 (1962) . . 8
*Civil Service Bar Ass'n, Local 237, etc. v. New York,*
    64 N.Y.2d 188, 474 N.E.2d 587, 485 N.Y.S.2d 227 (1984) . . . . . . . . . . . . . 11
*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.,*
    70 N.Y.2d 382, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987) . . . . . . . . . . . . 13, 17
*Clune v. Garden City Union Free Sch. Dist.,* No. No. 14401/04,
    2006 N.Y. App. Div. LEXIS 13821 (2d Dep't Nov. 21, 2006) . . . . . . . . . . . . . 7
*Collins v. Manhattan & Bronx Surface Transit Operating Auth.,*
    62 N.Y.2d 361, 465 N.E.2d 811, 477 N.Y.S.2d 91 (1984) . . . . . . . . . . . . . . 12
*Cunningham v. Local 30, Int'l Union of Operating Eng'rs,* 234 F.Supp.2d 383 (S.D.N.Y. 2002) . 11
*D'Andrea v. Long Island R. R.,* 70 N.Y.2d 683, 512 N.E.2d 547, 518 N.Y.S.2d 964 (1987) . 14, 18
*Davis v. Oyster Bay-East, Norwich Cen. Sch. Dist.,* No. 03-cv-1372,
    2006 U.S. Dist. LEXIS 82914, 2006 WL 657038 (E.D.N.Y. Mar. 9, 2006) . . . . . . . 7
*EBC I, Inc. v. Goldman Sachs & Co.,*
    5 N.Y.3d 11, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005) . . . . . . . . . . . . . . 13, 14
*Elias v. Albanese*, No. 00 Civ. 2219,
    2000 U.S. Dist. LEXIS 11929, 2000 WL 1182803 (S.D.N.Y. Aug. 18, 2000) . . . . . . 13
*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.,* 375 F.3d 168 (2d Cir. 2004) . . . 16

ii

*Fezzani v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 0793,
    2005 U.S. Dist. LEXIS 3266, 2005 WL 500377 (S.D.N.Y. Mar. 1, 2005) . . . . . . . 16
*First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004) . . . . . . . . . . 15
*Gammone v. Murphy*, 299 A.D.2d 551, 750 N.Y.S.2d 531 (2d Dep't 2002),
    *appeal dismissed*, 99 N.Y.2d 650 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . 18
*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 841 N.E.2d 742, 807 N.Y.S.2d 583 (2005) . . . 13
*Goldstein v. Tabb,* 177 A.D.2d 470, 575 N.Y.S.2d 902 (2d Dep't 1991),
    *appeal denied,* 80 N.Y.2d 753 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Gorga v. Amityville Teachers' Ass'n,* 9 Misc. 3d 1112A,
    808 N.Y.S.2d 917, 2005 N.Y. Misc. LEXIS 2048 (Sup. Ct., Suffolk County 2005) . . . 9
*Hague v. United Paperworkers Int'l Union,* 949 F.Supp. 979 (N.D.N.Y. 1996) . . . . . . . . 9
*Health-Chem Corp. v. Baker,* 915 F.2d 805 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . 6
*Helprin v. Harcourt, Inc.,* 277 F.Supp.2d 327 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . 15
*Holmes v. Grubman (In re WorldCom, Inc. Sec. Litig.),* No.'s 02 Civ. 3288, 04 Civ. 8308,
    2006 U.S. Dist. LEXIS 74307 (S.D.N.Y. Oct. 13, 2006) . . . . . . . . . . . . . . . . .14
*Islam v. Goord,* No. 05 Civ. 7502, 2006 U.S. Dist. LEXIS 71853 (S.D.N.Y. Sept. 29, 2006) . . 6
*Jackson v. New York City Transit,* No. 05-CV-1763,
    2005 U.S. Dist. LEXIS 25111, 2005 WL 2664527 (E.D.N.Y. Oct. 17, 2005) . . . . . . .9
*Johnson v. Gen. Motors,* 641 F.2d 1075 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . 10
*Kaminsky v. Connolly,* 51 A.D.2d 218, 380 N.Y.S.2d 658 (1st Dep't 1976),
    *aff'd,* 41 N.Y.2d 1068 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Karoon v. New York City Transit Auth.,* 241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997) . . 17
*King v. James,* No. 91-CV-952, 1991 U.S. Dist. LEXIS 17332, 1991 WL 25510
    (N.D.N.Y. November 29, 1991), *aff'd,* 969 F.2d 1041 (2d Cir. 1992) . . . . . . . . . 16
*Knight-McConnell v. Cummins,* No. 03 Civ. 5035,
    2004 U.S. Dist. LEXIS 14746, 2004 WL 1713824 (S.D.N.Y. July 29, 2004) . . . . . . 14
*Koehler v. New York City,* No. 04 Civ. 6929,
    2005 U.S. Dist. LEXIS 8901, 2005 WL 1123758 (S.D.N.Y. May 11, 2005) . . . . . . 10
*Laverpool v. New York City Transit Auth.,*
    835 F.Supp. 1440 (E.D.N.Y. 1993), *aff'd,* 41 F.3d 1501 (2d Cir. 1994) . . . . . . . . 18
*Lawrence v. Town of Irondequoit,* 246 F.Supp.2d 150 (W.D.N.Y. 2002) . . . . . . . . . . . 15
*LeBlanc v. Security Servs. Unit Employees of State Law Enforcement Officers Union,*
    278 A.D.2d 732, 718 N.Y.S.2d 116 (3d Dep't 2000) . . . . . . . . . . . . . . . . . 8, 9
*Leonelli v. Pennwalt Corp.,* 887 F.2d 1195 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . 6
*Lerner v. Fleet Bank, N.A.,* 459 F.3d 273 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . 15
*Lesavoy v. Gattullo-Wilson,* 170 Fed. Appx. 721, 2006 U.S. App. LEXIS 5480 (2d Cir. 2006) . 16
*Lippman v. Board of Educ. of the Sewanhaka Cent. High Sch. Dist.,*
    66 N.Y.2d 313, 487 N.E.2d 897, 496 N.Y.S.2d 987 (1985) . . . . . . . . . . . . . . 15
*Ljutovic v. 530 E. 86th St., Inc.*, No. 05 Civ. 9846,
    2006 U.S. Dist. LEXIS 62040 (S.D.N.Y. Aug. 31, 2006) . . . . . . . . . . . . . . . . 6
*Majer v. Metropolitan Transportation Auth.,* No. 90 Civ. 4608,
    1992 U.S. Dist. LEXIS 6239, 1992 WL 110995 (S.D.N.Y. May 6, 1992) . . . . . 17, 19
*Mason v. New York City Transit Auth.,* No. 04 Civ. 557,
    2005 U.S. Dist. LEXIS 11101 (S.D.N.Y. June 3, 2005) . . . . . . . . . . . . . . . . . 19
*Matter of City Employees Union Local 237, IBT AFL-CIO v. City of New York*,
    28 A.D.3d 230, 814 N.Y.S.2d 95 (1st Dep't 2006) . . . . . . . . . . . . . . . . . . . 8

*Minella v. Evergreens Cemetery,* No. CV-05-0728,
      2006 U.S. Dist. LEXIS 61237 (E.D.N.Y. Aug. 29, 2006) . . . . . . . . . . . . . . 9
*Mione v. McGrath*, 435 F.Supp.2d 266  (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . 16
*Miramax Film Corp. v. Abraham,* No. 01 CV 5202,
      2003 U.S. Dist. LEXIS 21346, 2003 WL 22832384 (S.D.N.Y. Nov. 24, 2003) . 15, 16, 18
*Moore v. PaineWebber, Inc.*, 189 F.3d 165 (2d Cir. 1999) . . . . . . . . . . . . . . . . . 16
*Mountbatten Sur. Co. v. Kips Bay Cinemas, Inc.*, No. 00 Civ. 0430,
      2000 U.S. Dist. LEXIS 17176, 2000 WL 1752916 (S.D.N.Y. Nov. 28, 2000) . . . . . . 14
*Muhlrad v. Mitchell*, No. 96 Civ. 3568,
      1997 U.S. Dist. LEXIS 4683, 1997 WL 182614 (S.D.N.Y. Apr. 14, 1997) . . . . 11, 15
*Munafo v. Metropolitan Transportation Auth.*, No.'s 98 CV-4572, 00-CV-0134,
      2003 U.S. Dist. LEXIS 13495, 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003) . . . . . . 17
*Nader v. ABC TV,* 150 Fed. Appx. 54, 2005 U.S. App. LEXIS 19536 (2d Cir. 2005) . . 13, 14, 16
*Narumanchi v. Board of Trustees,* 850 F.2d 70 (2d Cir. 1988) . . . . . . . . . . . . . . . . . 7
*Natale v. Brown,* No. 91 Civ. 0111, 1993 U.S. Dist. LEXIS 9479 (S.D.N.Y. June 24, 1993)) . . .16
*Naum v. City of New York,* No. 94 Civ. 5747,
      1996 U.S. Dist. LEXIS 3728, 1996 WL 140305 (S.D.N.Y. March 27, 1996) . . . . . . 11
*Naval v. Fernandez,* No. 97-CV-6800,
      1998 U.S. Dist. LEXIS 20182, 1998 WL 938942 (E.D.N.Y. Nov. 20, 1998) . . . . . . 8
*Nay v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
      No. 05 Civ. 10264, 2006 U.S. Dist. LEXIS 52074 (S.D.N.Y. July 25, 2006) . . . . . . 13
*New York Univ. v. Continental Ins. Co.*,
      87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) . . . . . . . . . . . . . . 14
*New York Urban League v. New York,* 71 F.3d 1031 (2d Cir. 1995) . . . . . . . . . . . . . . 19
*Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures),* 4 F.3d 1095 (2d Cir. 1993) .18
*Paglia v. New York City Transit Auth.*, No. 2001-1161 K C,
      2002 N.Y. Misc. LEXIS 1372 (2d & 11th Jud. Dists., App. Term, July 5, 2002) . . . . 10
*Peele v. New York City Dep't of Social Services/Human Resources Admin.*, No. 92 Civ. 3765,
      1995 U.S. Dist. LEXIS 18226, 1995 WL 728478 (S.D.N.Y. Dec. 7, 1995),
      *aff'd,* 112 F.3d 505, 1996 U.S. App. LEXIS 26081 (2d Cir. Oct. 3, 1996) . . . . . . . 10
*Perry v. Metro. Suburban Bus Auth.*, 390 F.Supp.2d 251 (E.D.N.Y. 2005) . . . . . . . . . . 17
*Petrello v. White*, 412 F.Supp.2d 215 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . 13, 16
*Plummer v. Klepak*, 48 N.Y.2d 486, 399 N.E.2d 897, 423 N.Y.S.2d 866 (1979),
      *cert. denied,* 445 U.S. 952 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Promisel v. First American Artificial Flowers*,
      943 F.2d 251 (2d Cir. 1991), *cert. denied,* 502 U.S. 1060 (1992) . . . . . . . . . . . 6
*Rigby v. Coughlin*, 730 F.Supp. 1196 (N.D.N.Y 1990) . . . . . . . . . . . . . . . . . . . 16
*Riverside Mktg., LLC v. SignatureCard, Inc.*, 425 F.Supp.2d 523 (S.D.N.Y. 2006) . . . . . . 13
*Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205,
      2005 U.S. Dist. LEXIS 23816, 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005),
      *aff'd,* No. 05-6173-cv, 2006 U.S. App. LEXIS 22542 (2d Cir. Aug. 31, 2006) . . . . 10, 15
*Sackey v. City of New York*, No. 04 Civ. 2775,
      2006 U.S. Dist. LEXIS 5483, 2006 WL 337355 (S.D.N.Y. Feb. 15, 2006) . . . . . . 7
*San Filippo v. U.S. Trust*, 737 F.2d 246 (2d Cir. 1984), *cert. denied,* 470 U.S. 1035 (1985) . . 16
*Schaefer v. Erie County Dep't of Soc. Servs.*, 82 F.Supp.2d 114 (W.D.N.Y. 2000) . . . . . . . 9
*Schermerhorn v. Metropolitan Transp. Auth.*, 156 F.3d 351 (2d Cir. 1998) . . . . . . . . . . 9

iv

*Sewell v. 1199 Nat'l Benefit Fund for Health and Human Servs.*,
   No. 04 Civ. 4474, 2005 U.S. Dist. LEXIS 12311 (S.D.N.Y. June 22, 2005) . . . . . . . .13
*Shanker v. Helsby*, 676 F.2d 31 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . .11
*Smith v. Sipe*, 67 N.Y.2d 928 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Straker v. Metro. Transit Auth.*, No. 03-CV-1756,
   2005 U.S. Dist. LEXIS 30956, 2005 WL 3287445 (E.D.N.Y. Dec. 5, 2005) . . . . . . . 9
*Stumm v. Drive Entm't, Inc.*, 2001 U.S. Dist. LEXIS 21675,
   2002 WL 5589 (S.D.N.Y. Dec. 27, 2001) . . . . . . . . . . . . . . . . . . . . . 15
*Sussman v. New York City Health & Hosps. Corp.*, No. 94 Civ. 8461,
   1997 U.S. Dist. LEXIS 8531, 1997 WL 334964 (S.D.N.Y. June 3, 1997) . . . . . . . 8
*Thomas v. Roach,* 165 F.3d 137 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . 16, 19
*Tomlinson v. Board of Educ.,* 223 A.D.2d 636,
   636 N.Y.S.2d 855 (2d Dep't 1996)*, appeal denied,* 88 N.Y.2d 808 (1996) . . . . . . . 8
*Town of Southampton v. N.Y. State Pub. Empl. Rels. Bd.,*
   2 N.Y.3d 513, 813 N.E.2d 602, 780 N.Y.S.2d 522 (2004) . . . . . . . . . . . 11
*TVT Records v. Island Def Jam Music Group,*
   412 F.3d 82 (2d Cir. 2005), *cert. denied,* 126 S.Ct. 2968 (2006) . . . . . . . . . . . 17
*United Fed'n of Law Enforcement Officers v. New York City Office of Collective Bargaining,*
   No. 87 Civ. 7407, 1990 U.S. Dist. LEXIS 9435 (S.D.N.Y. July 30, 1990) . . . . . . . 10


Federal
29 U.S.C. § 501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17
29 U.S.C. § 152(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15
29 U.S.C. § 152(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
29 U.S.C. § 402(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15, 17


State
N.Y. Constitution Art. 5 § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

N.Y. Civ. Prac. L. & R. § 217(2) . . . . . . . . . . . . . . . . . . . . . . . . 9
N.Y. Civ. Serv. Law §§ 209-a(2), 209-a(3) . . . . . . . . . . . . . . . . . . . . . 9
N.Y. Gen. Municipal Law § 50-e . . . . . . . . . . . . . . . . . . . . . . . . . 18
N.Y. Gen. Municipal Law §§ 92-a(1), 92-a(2) . . . . . . . . . . . . . . . . . . . 15
N.Y. Labor Law § 720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17
N.Y. Labor Law § 190(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
N.Y. Labor Law § 193(1)(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
N.Y. Labor Law § 721(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17
N.Y. Pub. Auth. Law § 1200, et seq . . . . . . . . . . . . . . . . . . . . . . . . 1
N.Y. Pub. Auth. Law § 1201(1) . . . . . . . . . . . . . . . . . . . . . . . . . 19
N.Y. Pub. Auth. Law § 1212(2) . . . . . . . . . . . . . . . . . . . . . . . . . 18
N.Y. Pub. Auth. Law § 1260, et seq. . . . . . . . . . . . . . . . . . . . . . . . . 1
N.Y. Pub. Auth. Law § 1276(2) . . . . . . . . . . . . . . . . . . . . . . . 14, 18

N.Y. Comp. Codes R. & Regs. tit. 4, § 204.1(1) . . . . . . . . . . . . . . . . . 12

**Preliminary Statement**

Plaintiffs brought this action under New York State law against the Metropolitan Transportation Authority (the "MTA") for the alleged damages suffered by plaintiffs as a result of the MTA's alleged "collusion" with plaintiffs' union representatives, allegedly through the MTA's negotiation and agreement on some issues with the plaintiffs' union representatives, the Transport Workers Union Local 100 (the "Union"). Plaintiffs have alleged only one Federal claim, which is solely against the co-defendant Union. Defendant MTA now moves to dismiss all of plaintiffs' claims against the MTA. The MTA respectfully submits that plaintiffs' allegations are at best within the jurisdiction of the mandatory grievance process of the Collective Bargaining Agreements, or in the jurisdiction of the New York State Public Employment Relations Board, and must therefore first seek resolution in one of those forums.

**Statement of Facts**

The following facts are admitted solely for the purposes of this Motion.

1.      The Metropolitan Transportation Authority (the "MTA") is a public authority and public benefit corporation duly organized and existing under the Public Authorities Law of the State of New York since 1965, and has a principal place of business at 347 Madison Avenue, New York, New York County, New York. N.Y. Pub. Auth. Law § 1260, et seq.

2.      The New York City Transit Authority (the "NYCTA") is a public authority and public benefit corporation duly organized and existing under the Public Authorities Law of the State of New York since 1953, and has a place of business at 130 Livingston Street, Brooklyn, Kings County, New York. N.Y. Pub. Auth. Law § 1200, et seq.

3.      The MTA and the NYCTA are affiliated, but are separate legal entities.

4.          None of the plaintiffs are employees of the MTA.

5.          Upon information and belief, all of the plaintiffs are employees of the NYCTA. (Complaint ¶¶ 14, 18, 22, 26, 30)

6.          Upon information and belief, all of the plaintiffs are public employees.

7.          Upon information and belief, co-defendant Transport Worker Union Local 100 (the "Union") is a labor union which is the recognized collective bargaining representative of the plaintiffs.  (Complaint ¶¶ 7, 10)

8.          All of the plaintiffs are bound by various Collective Bargaining Agreements between the Union and plaintiffs' employer (hereinafter "CBAs"), including the December 15, 2002 Integrated Agreement Between New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority and Transport Workers Union of America, Local 100, AFL-CIO (hereinafter "IA", attached in Chin Declaration as Exhibit A).

9.          The CBAs have a mandatory grievance procedure which allows for employees to bring their own grievances.  (IA, Article II, Sections 2.1.A.1, 2.1.B)

10.         Upon information and belief, in or about 1995 and 1996, approximately a decade ago, plaintiffs were required to have certain wage deductions made to cover the costs of early retiree health benefits.  The money was deposited with a pre-existing Health Benefit Trust (for purposes herein also known as Welfare Benefit Trust or Active Benefit Trust)  which was charged with providing health benefits to both active employees and retirees (Complaint ¶¶ 15, 19, 23, 27, 31)

11.         The Health Benefit Trust and the wage deductions which are the subject of this lawsuit were established in accordance with the CBAs between the plaintiffs' employer and the Union,  negotiated to offset the extra cost to the employer for the anticipated extra health

2

cost of retirees who were expected to take advantage of a new early retirement option. (Complaint ¶¶ 44, 53)

12. The wage deductions, at a rate to be determined, for the early retirees were to be placed into a Health Benefit Trust (IA, Section 1.11, A)

13. The amount of the wage deductions for the early retiree option was established by arbitrations in 1994 and 1995 (Collins Arbitration Award, 1994; Rubin Arbitration Award, 1995, attached in Chin Declaration as Exhibit B).

14. The extra wage deductions for the early retiree option were discontinued, pursuant to a collective bargaining agreement reached in 1996 between plaintiffs' employer and the Union. (IA, Section 1.11, B3).

15. Ultimately, the entire Health Benefit Trust was discontinued pursuant to the CBAs. Plaintiffs' employer agreed, in lieu of payments to the Health Benefit Trust, to provide a guaranteed defined benefit plan for both active employees and retirees.  (IA, Section 1.11; December 16, 2002 Memorandum of Understanding, hereinafter "2002 MOU", Section 4, attached in Chin Declaration as Exhibit C; Agreement of the New York City Transit Authority to Assume the Assets and Liabilities of the TWU-NYCTA-MaBSTOA Health Benefit Trust, dated December 2003, hereinafter the "2003 Health Benefit Agreement", Section 2, attached in Chin Declaration as Exhibit D)

16. Since 2003, plaintiffs' employer and the Union have agreed that plaintiffs' employer would maintain the pre-existing levels of benefits under a defined benefits plan to be provided directly by the plaintiffs' employer, but not through the Health Benefit Trust.  (IA, Section 1.11, B3; 2003 Health Benefit Agreement, Section 2)  Plaintiffs' employer has been released of obligations to certain employment titles.  (IA, Section 1.11, C)  Pursuant to the

CBAs, plaintiffs' employer continued to assume obligations for certain pensioners under the 1994 agreement between the Union and plaintiffs' employer.  (IA, Section 1.11, E). Plaintiffs' employer would otherwise assume the obligations of the Health Benefit Trust and maintain the current level of benefits subject to certain agreed upon adjustments.  (2002 MOU, Section 4)   Pursuant to the CBAs, the Health Benefit Trust was terminated and its assets drawn down.  (2003 Health Benefit Agreement, Section 2)

17.        There is no separate defined account for the monies of the former Health Benefit Trust.  (2003 Health Benefit Agreement, Sections 2)

18.        All of plaintiffs' claims against the MTA arise, if at all, under state law. (Complaint ¶¶ 59-64, First Cause of Action (misappropriation);   ¶¶ 65-68, Second Cause of Action (conversion);  ¶¶ 74-75, Fifth Cause of Action (fraud and false promises);  ¶¶ 76-77, Sixth Cause of Action (unjust enrichment);  ¶¶ 78-79, Seventh Cause of Action (N.Y. Gen. Mun. Law § 92-a(2) wrongful wage garnishment);  ¶¶ 80-81, Eighth Cause of Action, (N.Y. Labor Law § 193(1)(b) wrongful wage garnishment);  ¶¶ 82-83, Ninth Cause of Action (breach of contract);  ¶¶ 84-89, Tenth Cause of Action (misappropriation);  ¶¶ 90-93, Eleventh Cause of Action (conversion);  ¶¶ 99-100, Fourteenth Cause of Action (fraud and false promises);  ¶¶ 101-102, Fifteenth Cause of Action (unjust enrichment);  ¶¶ 103-104, Sixteenth Cause of Action (N.Y. Gen. Mun. Law § 92-a(2) wrongful wage garnishment);  ¶¶ 105-106, Seventeenth Cause of Action (N.Y. Labor Law § 193(1)(b) wrongful garnishment);  ¶¶ 107-108, Eighteenth Cause of Action (breach of contract)).

19.        All of plaintiffs' claims against the MTA arise, if at all, from some alleged breach of the Collective Bargaining Agreements.

20.        Plaintiffs brought this action in May 2006 in the New York State Supreme Court,

4

New York County, and admitted that they knew of the alleged breach no later than three months before the date of the Complaint.  (Complaint, ¶ 3)

21.        Plaintiffs do not, and indeed cannot, allege that they provided the statutorily required notice of claim, where necessary, on plaintiffs' state claims against the MTA.  N.Y. Pub. Auth. Law. § 1276.

22.        Plaintiffs do not, and indeed cannot, allege that they attempted to address their claims in the forums required by the Collective Bargaining Agreements (grievance or arbitration), or by the New York State "Taylor Law" before the Public Employment Relations Board.

23.        In November 2006, MTA requested permission, which the Court granted, to submit a Motion to Dismiss for reasons including the fact that the MTA is wrongly alleged as plaintiffs' employer.  In response to MTA's request, plaintiffs on or about November 13, 2006 requested permission to amend their Complaint.

24.        As of January 18, 2007, which is over a month after the deadline of December 8, 2006 established by the Court's Scheduling Order dated November 27, 2007 by which amended pleadings were to be served, plaintiffs still have not served any amended complaint.  The only papers served by plaintiffs since permission was granted to amend the complaint, were plaintiffs' demands for discovery received by the MTA on December 26, 2006 and December 28, 2006.

25.        Accordingly, the MTA's Motion to Dismiss herein addresses the only filed Complaint in this action, which still wrongly alleges the MTA as plaintiffs' employer.

26.        Although the MTA will, for the purposes of this Motion to Dismiss, challenge plaintiffs' Complaint as if the MTA is plaintiffs' employer, the MTA notes that plaintiffs do not, and indeed cannot, dispute that the MTA is not actually plaintiffs' employer.

**Argument**

Plaintiffs' complaint is based entirely on the Collective Bargaining Agreements between plaintiffs' employer and plaintiffs' recognized union representatives.  Accordingly, for this Motion to Dismiss, the Court may consider the Collective Bargaining Agreements which are integral to the Complaint.  *Ljutovic v. 530 E. 86th St., Inc.*, No. 05 Civ. 9846, 2006 U.S. Dist. LEXIS 62040, at *9 (S.D.N.Y. Aug. 31, 2006).  Plaintiffs allege no federal claims against the MTA, and all of plaintiffs' state claims alleged against the MTA are barred under state law.  *Promisel v. First American Artificial Flowers*, 943 F.2d 251, 257 (2d Cir. 1991) (federal courts must abide by the state's restrictions regarding the state claims), *cert. denied*, 502 U.S. 1060 (1992).  Accordingly, plaintiffs' claims against the MTA should be entirely dismissed, without any further leave to amend because amendment would be futile.  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990); *Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir. 1989);   *Islam v. Goord*, No. 05 Civ. 7502, 2006 U.S. Dist. LEXIS 71853, at *25 n.6 (S.D.N.Y. Sept. 29, 2006);  *Ljutovic v. 530 E. 86th St., Inc.*, No. 05 Civ. 9846, 2006 U.S. Dist. LEXIS 62040, at *15 (S.D.N.Y. Aug. 31, 2006).

## POINT I

### PLAINTIFFS FAILED TO EXHAUST MANDATORY GRIEVANCE PROCEDURES FOR PLAINTIFFS' CLAIMS WHICH ALL ARISE FROM ALLEGED BREACHES OF COLLECTIVE BARGAINING AGREEMENTS.

Plaintiffs are barred from claims based on the Collective Bargaining Agreements ("CBAs") because plaintiffs have not adhered to the mandatory grievance procedures of the CBAs.  (IA, Article II, Sections 2.1.A.1, 2.1.B, also excerpted in Appendix herein)   Having failed to invoke plaintiffs' administrative remedies, plaintiffs may not now seek redress in court. *Board of Education v. Ambach*, 70 N.Y.2d 501, 508, 517 N.E.2d 509, 522 N.Y.S.2d 831 (1987), *cert. denied*, *Margolin*

*v. Board of Education*, 485 U.S. 1034 (1988);  *Plummer v. Klepak*, 48 N.Y.2d 486, 489-90, 399

N.E.2d 897, 423 N.Y.S.2d 866 (1979), *cert. denied,* 445 U.S. 952 (1980);  *Clune v. Garden City*

*Union Free Sch. Dist.*, No. No. 14401/04, 2006 N.Y. App. Div. LEXIS 13821, at *3 (2d Dep't Nov.

21, 2006);  *Goldstein v. Tabb*, 177 A.D.2d 470, 471, 575 N.Y.S.2d 902 (2d Dep't 1991), *appeal*

*denied*, 80 N.Y.2d 753 (1992).

Plaintiffs must first exhaust whatever dispute-resolution or grievance procedures that exist

in the Collective Bargaining Agreements before suing in court.  *Cespuglio v. Ward,* No. 03 Civ.

8603, 2004 U.S. Dist. LEXIS 8586 at *16, 2004 WL 1088235 (S.D.N.Y. May 12, 2004).  See also,

*Davis v. Oyster Bay-East, Norwich Cen. Sch. Dist.*, No. 03-cv-1372, 2006 U.S. Dist. LEXIS 82914,

at *47, 2006 WL 657038 (E.D.N.Y. Mar. 9, 2006) (citing *Board of Education v. Ambach*, 70 N.Y.2d

501, 508 (1987));  *Sackey v. City of New York*, No. 04 Civ. 2775, 2006 U.S. Dist. LEXIS 5483, at

*32, 2006 WL 337355 (S.D.N.Y. Feb. 15, 2006) (same);  *Blackmon v. UNITE!*, No. 03 Civ. 9214,

2005 U.S. Dist. LEXIS 18004, at *49-51, 2005 WL 2038482 (S.D.N.Y. Aug. 25, 2005) (where

collective bargaining agreement contained "clear grievance and arbitration procedures" and plaintiff

"failed to file a grievance or to seek arbitration of his claim").

Any self-serving claim by plaintiffs alleging futility because of the Union's hostility is

without merit. *Narumanchi v. Board of Trustees*, 850 F.2d 70, 72 (2d Cir. 1988) (mere assertion of

inevitable bias and partiality in a forum whose composition is specified by the terms of a collective

bargaining agreement is insufficient.);  *Brown v. County of Nassau*, 288 A.D.2d 216, 217, 733

N.Y.S.2d 107 (2d Dep't 2001) (proceeding through all five steps of grievance procedure remained

necessary despite argument that steps would have been futile).  Here, plaintiffs do not, and indeed

cannot, allege that they ever attempted to initiate any grievance at all, or to charge the Union or the

MTA at the New York State Public Employment Relations Board ("PERB").  Furthermore, the

existence or lack of internal Union remedies (Complaint ¶ 72) available in addition to CBA remedies does not excuse plaintiffs' failure to use the CBA grievance process, particularly as plaintiffs could have initiated such CBA grievances by themselves without the Union (IA, Article II, Section 2.1.B). Accordingly, all of plaintiffs' claims are barred.

### POINT II

### AS A MATTER OF LAW, ALL OF PLAINTIFFS' CAUSES OF ACTIONS AGAINST THE MTA FAIL TO STATE A CLAIM.

**a.    Plaintiffs' Breach of Contract Claims Against the MTA Must Be Dismissed.**

i.    <u>Plaintiffs failed to fulfill conditions precedent for a breach of contract claim</u>.

Plaintiffs, who are subject to Collective Bargaining Agreements, may not sue their employer directly for breach of that agreement, but must proceed in accordance with the agreements. Only when the Union has failed in its duty of fair representation can the employee ever litigate a contract issue against the employer.[1] *Board of Education v. Ambach*, 70 N.Y.2d 501, 508, 517 N.E.2d 509, 522 N.Y.S.2d 831 (1987), *cert. denied*, *Margolin v. Board of Education*, 485 U.S. 1034 (1988); *Naval v. Fernandez*, No. 97-CV-6800, 1998 U.S. Dist. LEXIS 20182, at *19, 1998 WL 938942 (E.D.N.Y. Nov. 20, 1998); *Sussman v. New York City Health & Hosps. Corp.*, No. 94 Civ. 8461, 1997 U.S. Dist. LEXIS 8531, at *59, 1997 WL 334964 (S.D.N.Y. June 3, 1997);    *Matter of City*

---

[1]    Plaintiffs cannot directly bring a breach of contract claim against their employer, here allegedly the MTA.   *Chupka v. Lorenz-Schneider Co.*, 12 N.Y.2d 1, 6, 186 N.E.2d 191, 233 N.Y.S.2d 929 (1962) (as union-member beneficiaries of a collective bargaining agreement plaintiffs have disabled themselves from asserting in the courts any right to litigate any controversy between their employer and the employees represented by the union); *LeBlanc v. Security Servs. Unit Emples. of State Law Enforcement Officers Union, Council 82*, 278 A.D.2d 732, 733, 718 N.Y.S.2d 116 (3d Dep't 2000) (plaintiffs lack privity and may not assert direct contractual claims based on the collective bargaining agreement); *Tomlinson v. Board of Educ.*, 223 A.D.2d 636, 638, 636 N.Y.S.2d 855 (2d Dep't 1996) (plaintiff had no standing to bring a direct claim against employer), *appeal denied*, 88 N.Y.2d 808 (1996).

*Employees Union Local 237, IBT AFL-CIO v. City of New York*, 28 A.D.3d 230, 231, 814 N.Y.S.2d 95 (1st Dep't 2006).  And see, *cf., Minella v. Evergreens Cemetery,* No. CV-05-0728, 2006 U.S. Dist. LEXIS 61237, at *12 (E.D.N.Y. Aug. 29, 2006) (claim against employer is dismissed because the fair representation claim against union was dismissed);  *Hague v. United Paperworkers Int'l Union*, 949 F.Supp. 979, 987-88 (N.D.N.Y. 1996) (same).

Here, plaintiffs failed to bring any claim that the Union failed in the Union's duty of fair representation, which pursuant to the New York State "Taylor Law" would have required also naming plaintiffs' employer (allegedly the MTA).   N.Y. Civil Service Law §§ 209-a(2), 209-a(3). At this point, however, any action against the Union for the duty of fair representation, or against plaintiffs' employer would be time-barred since such an action needed to have been brought within four months of the date that the employee knew or should have known that the duty of fair representation had been breached.  *Schermerhorn v. Metropolitan Transp. Auth.*, 156 F.3d 351, 353-54 (2d Cir. 1998); *Straker v. Metro. Transit Auth.*, No. 03-CV-1756, 2005 U.S. Dist. LEXIS 30956, at *13, 2005 WL 3287445 (E.D.N.Y. Dec. 5, 2005); *Jackson v. New York City Transit*, No. 05-CV-1763, 2005 U.S. Dist. LEXIS 25111, at *8-9, 2005 WL 2664527 (E.D.N.Y. Oct. 17, 2005); *Schaefer v. Erie County Dep't of Soc. Servs.*, 82 F.Supp.2d 114, 118 (W.D.N.Y. 2000);  *Alaimo v. State Univ. of New York*, No. 97-CV-0285E(H), 1997 U.S. Dist. LEXIS 13074, at *3-4 (W.D.N.Y. Aug. 29, 1997);  *LeBlanc v. Security Servs. Unit Emples. of State Law Enforcement Officers Union, Council 82*, 278 A.D.2d 732, 733, 718 N.Y.S.2d 116 (3d Dep't 2000); *Gorga v. Amityville Teachers' Ass'n*, 9 Misc. 3d 1112A, 808 N.Y.S.2d 917, 2005 N.Y. Misc. LEXIS 2048, at *2-3 (Sup. Ct., Suffolk County 2005);  N.Y. Civ. Prac. L. &  R.§ 217(2).

Accordingly, plaintiffs' claims now would be time-barred.  Plaintiffs admit that any alleged breach occurred back in 1995-1996 when the deductions were made (Complaint  ¶¶ 44-55).

Therefore, any claim against plaintiffs' employer is now time-barred. *Peele v. New York City Dep't of Social Services/Human Resources Admin.*, No. 92 Civ. 3765, 1995 U.S. Dist. LEXIS 18226, at *11, 1995 WL 728478 (S.D.N.Y. Dec. 7, 1995) (Federal courts must abide by any restriction the state imposes on a plaintiff's right to bring an action regarding a state claim.), *aff'd*, 112 F.3d 505, 1996 U.S. App. LEXIS 26081, at *5 (2d Cir. Oct. 3, 1996).  And see, *Koehler v. New York City*, No. 04 Civ. 6929, 2005 U.S. Dist. LEXIS 8901, at *24 n.4, 2005 WL 1123758 (S.D.N.Y. May 11, 2005) (the lack of a remedy because plaintiff would be time-barred would not change a dismissal result); *United Federation of Law Enforcement  Officers v. New York City Office of Collective Bargaining*, No. 87 Civ. 7407, 1990 U.S. Dist. LEXIS 9435, at *10-11 (S.D.N.Y. July 30, 1990) (the fact that a grievance is time-barred does not transform a local labor law issue into an issue deserving of relief in federal court).  Accord, *Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 05-6173-cv, 2006 U.S. App. LEXIS 22542, at *6-7 (2d Cir. Aug. 31, 2006) (New York's six year statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered or should have been discovered).

Not only are plaintiffs' claims time-barred, but plaintiffs' failure to initiate a grievance proceeding obviates any claim that the Union failed in its duty of fair representation.  *Paglia v. New York City Transit Auth.*, No. 2001-1161 K C, 2002 N.Y. Misc. LEXIS 1372, at *3 (2d & 11th Jud. Dists., App. Term, July 5, 2002).  See also, *Johnson v. Gen. Motors*, 641 F.2d 1075, 1085 (2d Cir. 1981) ("unless [an employee] attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court would be dismissed.");  Point I, *supra*.

In fact, even if plaintiffs are not time-barred, plaintiffs cannot meet the high standard for claiming failure in the duty of fair representation.  Where the complaint here is at most merely that

the union negotiated poor collective bargaining agreements or somehow offered incorrect information to its members, there is no viable claim.  *Smith v. Sipe*, 67 N.Y.2d 928 (1986) (citing the dissenting opinion below at 109 A.D.2d 1034, 1036-37, 487 N.Y.S.2d 153 (3d Dep't 1985)); *Buffalo Police Benevolent Ass'n v. N.Y. State Pub. Empl. Rels. Bd.*, 286 A.D.2d 993, 993, 730 N.Y.S.2d 820 (4th Dep't 2001) (mistake, negligence or incompetence with respect to dissemination of information not a sufficient basis for claim on duty of fair representation); *Kaminsky v. Connolly*, 51 A.D.2d 218, 221, 380 N.Y.S.2d 658 (1st Dep't 1976) (even if union was guilty of negligence, mistake or lack of competence), *aff'd*, 41 N.Y.2d 1068 (1977).  See also, *Civil Service Bar Ass'n, Local 237, etc. v. New York*, 64 N.Y.2d 188, 197, 474 N.E.2d 587, 485 N.Y.S.2d 227 (1984) (union's balancing of divergent membership interests does not violate duty of fair representation).

    To the extent that plaintiffs are attempting to claim misconduct by the MTA during the negotiations of the Collective Bargaining Agreements, any such claim would also be barred because a claim that an employer somehow failed or refused to negotiate in good faith could only be brought by the Union, and would have been subject to the exclusive jurisdiction of the New York State Public Employment Relations Board ("PERB").[2]  *Town of Southampton v. N.Y. State Pub. Empl.*

---

    [2]     Plaintiffs, the Union, and the MTA and its affiliates and subsidiaries are subject to PERB.  *Shanker v. Helsby*, 676 F.2d 31, 32-33 (2d Cir. 1982);  *Buffalo Teachers Federation, Inc. v. Helsby*, 515 F.Supp. 215, 217-18 (S.D.N.Y. 1981) (describing the New York State Taylor Law), *aff'd*, 676 F.2d 28 (2d Cir. 1982).  In fact, the MTA and its affiliates and subsidiaries are not subject to Federal labor laws in the same context.  29 U.S.C. §§ 152(2), 152(3), 402(e) (the term "employer" does not include any state or political subdivision).  An individual who is employed by a public authority does not have an "employer" as defined in the National Labor Relations Act ("NLRA"), and the individual cannot bring a claim against a union for breach of the duty of fair representation under the NLRA with respect to that employer.  *Cunningham v. Local 30, Int'l Union of Operating Eng'rs*, 234 F.Supp.2d 383, 395-96 (S.D.N.Y. 2002);  *Muhlrad v. Mitchell*, No. 96 Civ. 3568, 1997 U.S. Dist. LEXIS 4683, at *9-10, 1997 WL 182614, at *3 (S.D.N.Y. Apr. 14, 1997).  See also, *Baumgart v. Stony Brook Children's Serv.*, No. 03-CV-5526, 2006 U.S. Dist. LEXIS 45757, at *25 (E.D.N.Y. July 6, 2006);  *Naum v. City of New York*, No. 94 Civ. 5747, 1996 U.S. Dist. LEXIS 3728, at *5, 1996 WL 140305 (S.D.N.Y. March 27, 1996).

*Rels. Bd.*, 2 N.Y.3d 513, 518-19, 813 N.E.2d 602, 780 N.Y.S.2d 522 (2004) (PERB has jurisdiction over refusals to negotiate in good faith); *Collins v. Manhattan & Bronx Surface Transit Operating Auth.*, 62 N.Y.2d 361, 373, 465 N.E.2d 811, 477 N.Y.S.2d 91 (1984) (same); N.Y. Comp. Codes R. & Regs. tit. 4, § 204.1(1) (four months time limitations on improper practice claims).

ii.    <u>Plaintiffs failed to state any claim for a breach of the Collective Bargaining Agreements</u>.

Plaintiffs have no claim for breach of contract when there has been no breach of the agreements between the Union and plaintiffs' employer.  There had been a Health Benefit Trust created pursuant to agreements between the Union and plaintiffs' employer.  Since 2003, however, plaintiffs' employer and the Union have agreed that plaintiffs' employer would maintain the pre-existing levels of benefits through a defined benefit plan, without the existence of the Health Benefit Trust. (IA, Section 1.11, B3; 2003 Health Benefit Agreement, Section 2, also excerpted in Appendix herein)   Plaintiffs' employer has been released of obligations to certain employment titles.  (IA, Section 1.11, C)  Plaintiffs' employer would continue to be obligated for certain pensioners under the 1994 agreement between the Union and plaintiffs' employer.  (IA, Section 1.11, E).  Plaintiffs' employer would otherwise assume the obligations of the Health Benefit Trust and maintain the current level of benefits subject to certain agreed adjustments. (2002 MOU, Section 4)   The Health Benefit Trust was terminated and its assets drawn down. (2003 Health Benefit Agreement, Section 2)  Plaintiffs do not, and indeed cannot, allege any breach of these terms.  Accordingly, the MTA has not breached the CBAs, nor have plaintiffs been legally damaged in any way.

**b.    Plaintiffs' Other Common Law Claims Against the MTA Must Be Dismissed.**

Plaintiffs' unjust enrichment claims are precluded because there is a valid and enforceable contract governing the particular subject matter.  *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006); *Riverside Mktg., LLC v. SignatureCard, Inc.*,

425 F.Supp.2d 523, 534 (S.D.N.Y. 2006);  *Amadasu v. Ngati*, No. 05 Civ. 2585, 2006 U.S. Dist.

LEXIS 19654, at *25-27, 2006 WL 842456 (E.D.N.Y. Mar. 27, 2006);  *Petrello v. White*, 412

F.Supp.2d 215, 233 (E.D.N.Y. 2006);  *Sewell v. 1199 Nat'l Benefit Fund for Health and Human

Servs.*, No. 04 Civ. 4474, 2005 U.S. Dist. LEXIS 12311, at *5 (S.D.N.Y. June 22, 2005);  *Elias v.

Albanese*, No. 00 Civ. 2219, 2000 U.S. Dist. LEXIS 11929, at *13-15, 2000 WL 1182803, at *4

(S.D.N.Y. Aug. 18, 2000).  See also,  *EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 22-23, 832

N.E.2d 26, 799 N.Y.S.2d 170 (2005);  *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 587, 841

N.E.2d 742, 807 N.Y.S.2d 583 (2005);  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d

382, 388-89, 516 N.E.2d 190,  521 N.Y.S.2d 653 (1987).  Accord,  *Nader v. ABC TV, Inc.*, 150 Fed.

Appx. 54, 2005 U.S. App. LEXIS 19536, at *8-9 (2d Cir. 2005).  Here, plaintiffs themselves have

alleged valid and enforceable CBAs, and therefore the unjust enrichment claims must be dismissed.

Plaintiffs' conversion claims, which are again the same contract-based claims, also must be

dismissed.  *Riverside Mktg., LLC v. SignatureCard, Inc.*, 425 F.Supp.2d 523, 536 (S.D.N.Y. 2006);

*Elias v. Albanese*, No. 00 Civ. 2219, 2000 U.S. Dist. LEXIS 11929, at *14 (S.D.N.Y. Aug. 18,

2000);  *Chubb & Son, Inc. v. Kelleher*, No.'s 92 CV 4484, 95 CV 951, 1998 U.S. Dist. LEXIS

22542, at *83-84 (E.D.N.Y. Feb. 26, 1998).   See also, *Nay v. Merrill Lynch, Pierce, Fenner &

Smith, Inc.*, No. 05 Civ. 10264, 2006 U.S. Dist. LEXIS 52074, at *16-17 (S.D.N.Y. July 25, 2006)

(conversion claim fails unless funds at issue are in distinct separate accounts in which they are

specifically identifiable).  Here, not only are the alleged funds not in any separate account, the

conversion claims are duplicative of the alleged breach of contract claim, and therefore must be

dismissed.

Any of plaintiffs' claims which rest on alleged breaches of good faith and fair dealing are

duplicative of the breach of contract claim, and also should be dismissed.  *Amadasu v. Ngati*, No.

05 Civ. 2585, 2006 U.S. Dist. LEXIS 19654, at *25-27, 2006 WL 842456 (E.D.N.Y. Mar. 27, 2006);
*EBC I, Inc. v. Goldman Sachs & Co.*, 5 N.Y.3d 11, 22-23, 832 N.E.2d 26, 799 N.Y.S.2d 170 (2005);
*New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 319-20, 662 N.E.2d 763, 639 N.Y.S.2d 283
(1995). Accord, *Nader v. ABC TV, Inc.*, 150 Fed. Appx. 54, 2005 U.S. App. LEXIS 19536, at *7-10
(2d Cir. 2005).   Indeed, without an adequate pleading of a breach of a term of contract, plaintiffs
may not plead a breach of the implied duty of good faith and fair dealing. *Holmes v. Grubman (In
re WorldCom, Inc. Sec. Litig.)*, No.'s 02 Civ. 3288, 04 Civ. 8308, 2006 U.S. Dist. LEXIS 74307, at
*26-27 (S.D.N.Y. Oct. 13, 2006).

Plaintiffs' misappropriation claims also must fail because plaintiffs failed to satisfy
conditions precedent required to bring such a tort claim,  and because plaintiffs fail to state the
elements required for pleading misappropriation. *D'Andrea v. Long Island R. R. Co.*, 70 N.Y.2d
683, 512 N.E.2d 547, 518 N.Y.S.2d 964 (1987) (citing to opinion below, 117 A.D.2d 10, 12-13, 501
N.Y.S.2d 891 (2d Dep't 1986));  N.Y. Pub. Auth. Law § 1276(2) (requiring notice of claim).   And
see, *Knight-McConnell v. Cummins*, No. 03 Civ. 5035, 2004 U.S. Dist. LEXIS 14746, at *11 n.6,
2004 WL 1713824, at *3 n.6  (S.D.N.Y. July 29, 2004) ("misappropriation" is a tort that requires
a showing that "the defendant must have misappropriated the labors and expenditures of another");
*Mountbatten Sur. Co. v. Kips Bay Cinemas, Inc.*, No. 00 Civ. 0430, 2000 U.S. Dist. LEXIS 17176,
at *18 n.5, 2000 WL 1752916 (S.D.N.Y. Nov. 28, 2000) (recovery in tort for misappropriation).
Furthermore, the alleged misappropriation of funds claim is indistinguishable from plaintiffs' alleged
breach of contract claim.

**c.      Plaintiffs' Statutory Claims Against the MTA Must Be Dismissed.**

The MTA simply is not subject to plaintiffs'  Fourth, Seventh, Eighth, Ninth, Thirteenth,
Sixteenth, Seventeenth, or Eighteenth Causes of Action under 29 U.S.C. § 501,  N.Y. Labor Law

§§ 193(1)(b) and 720,   N.Y. Gen. Municipal Law § 92-a(2), or N.Y. Constitution Art. 5 § 7.   The MTA is not an employer (nor is the NYCTA) under those statutes and the health benefit at issue is not under the N.Y. Constitution Art. 5 § 7.   See, *Muhlrad v. Mitchell*, No. 96 Civ. 3568, 1997 U.S. Dist. LEXIS 4683, at *9-10, 1997 WL 182614, at *3 (S.D.N.Y. Apr. 14, 1997);   29 U.S.C. §§ 152(2), 402(e);  N.Y. Gen. Municipal Law § 92-a(1);  N.Y. Labor Law §§ 190(3), 721(2);  *Lippman v. Board of Educ. of the Sewanhaka Cent. High Sch. Dist.*, 66 N.Y.2d 313, 317, 487 N.E.2d 897, 496 N.Y.S.2d 987 (1985) (Health insurance benefits are not within protection of Article 5, § 7 of the New York State Constitution.);   *Lawrence v. Town of Irondequoit*, 246 F.Supp.2d 150, 170 (W.D.N.Y. 2002) (same).

**d.      Plaintiffs' Fraud and Conspiracy Claims Against the MTA Must Be Dismissed.**

Plaintiffs' fraud and conspiracy claims must be dismissed.  A cause of action sounding in fraud is not viable when the only fraud charged relates back to an alleged breach of contract. *CAMOFI Master LDC v. College P'ship,* 452 F.Supp.2d 462, 477, 481 (S.D.N.Y. 2006);  *Rosenblatt v. Christie, Manson & Woods Ltd.*, No. 04 Civ. 4205, 2005 U.S. Dist. LEXIS 23816, at *31, 2005 WL 2649027 (S.D.N.Y. Oct. 14, 2005), *aff'd*, No. 05-6173-cv, 2006 U.S. App. LEXIS 22542, at *6 (2d Cir. Aug. 31, 2006);  *Helprin v. Harcourt, Inc.*, 277 F.Supp.2d 327, 335-36 (S.D.N.Y. 2003);  *Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 U.S. Dist. LEXIS 21346, at *32-34, 2003 WL 22832384, at *10-14 (S.D.N.Y. Nov. 24, 2003);  *Stumm v. Drive Entm't, Inc.*, 2001 U.S. Dist. LEXIS 21675, at *20, 2002 WL 5589, at *7 (S.D.N.Y. Dec. 27, 2001).

Furthermore, claims of fraud require particular details and the plaintiffs must allege facts that give rise to a strong inference of fraudulent intent.   *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006);  *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 178-79 (2d Cir. 2004);  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 186-87 (2d Cir.

2004);  *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999);  *Petrello v. White*, 412 F.Supp.2d 215, 235 (E.D.N.Y. 2006) (allegations of fraud must be stated with particularity); *Fezzani v. Bear, Stearns & Co., Inc.*, No. 99 Civ. 0793,  2005 U.S. Dist. LEXIS 3266, at \*26, 2005 WL 500377 (S.D.N.Y. Mar. 1, 2005);  *Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 U.S. Dist. LEXIS 21346, at \*32-34, 2003 WL 22832384, at \*10-14 (S.D.N.Y. Nov. 24, 2003); *Chubb & Son, Inc. v. Kelleher*, No.'s 92 CV 4484, 95 CV 951, 1998 U.S. Dist. LEXIS 22542, at \*67 (E.D.N.Y. Feb. 26, 1998).   Accord,  *Lesavoy v. Gattullo-Wilson*, 170 Fed. Appx. 721, 2006 U.S. App. LEXIS 5480, at \*4-5 (2d Cir. 2006);  *Nader v. ABC TV, Inc.*, 150 Fed. Appx. 54, 2005 U.S. App. LEXIS 19536, at \*7-8 (2d Cir. 2005).   Here, plaintiffs allege fraud only in the context of a breach of contract claim; and do not, and indeed cannot, provide any particular details of alleged MTA misconduct.   Accordingly, all of plaintiffs' fraud claims against the MTA must be dismissed.

In addition, conclusory allegations that entities acted in concert do not plead a conspiracy. See, *e.g.*,  *Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir. 1999);  *San Filippo v. U.S. Trust Co.*, 737 F.2d 246, 256-57 (2d Cir. 1984),  *cert. denied*, 470 U.S. 1035 (1985);   *Mione v. McGrath*, 435 F.Supp.2d 266, 272  (S.D.N.Y. 2006) (for 42 U.S.C. § 1985).   There is a higher burden for pleading a claim of conspiracy, requiring detailed facts.  *Natale v. Brown*, No. 91 Civ. 0111, 1993 U.S. Dist. LEXIS 9479, at \*28-29 (S.D.N.Y. June 24, 1993);  *King v. James*, No. 91-CV-952, 1991 U.S. Dist. LEXIS 17332, at \*19-20, 1991 WL 25510 (N.D.N.Y. November 29, 1991) (diffuse and expansive allegations of a conspiracy are insufficient), *aff'd*, 969 F.2d 1041 (2d Cir. 1992);  *Rigby v. Coughlin*, 730 F.Supp. 1196, 1199 (N.D.N.Y 1990) (claim that defendants conspired together and knowingly acted in collusion dismissed).   And see,  *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981) ("[C]ertain claims are so easily made and can precipitate such protracted proceedings with such disruption of governmental functions that, . . . detailed fact pleading is required to withstand a motion to

dismiss.").

Where in the present case the relevant collective bargaining agreements at issue were negotiated between plaintiffs' public employer and plaintiffs' recognized union representatives, conclusory allegations of conspiracy "ring especially hollow". *Cf., Perry v. Metro. Suburban Bus Auth.*, 390 F.Supp.2d 251, 259, 263 (E.D.N.Y. 2005).   Furthermore, the MTA is not even an employer subject to plaintiffs' Fourth or Thirteenth Causes of Action alleging "conspiracy and collusion" under either 29 U.S.C. § 501 or N.Y. Labor Law § 720.   See, 29 U.S.C. § 402(e);  N.Y. Labor Law § 721(2).

## POINT III

### PLAINTIFFS' REMAINING CLAIMS ALSO MUST BE DISMISSED.

Plaintiffs' claims for punitive damages are not available against public benefit corporations such as the MTA or the NYCTA.  See,  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 386-87, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987);  *Karoon v. New York City Transit Auth.*, 241 A.D.2d 323, 325, 659 N.Y.S.2d 27 (1st Dep't 1997);  *Bowles v. New York City Transit Auth.*, No.'s 00 Civ. 4213, 03 Civ. 3073, 2006 U.S. Dist. LEXIS 32914, at *25 n.14 (S.D.N.Y. May 23, 2006);  *Munafo v. Metropolitan Transportation Auth.*, No.'s 98 CV-4572, 00-CV-0134, 2003 U.S. Dist. LEXIS 13495, at *67-68, 2003 WL 21799913 (E.D.N.Y. Jan. 22, 2003);   *Majer v. Metropolitan Transportation Auth.*, No. 90 Civ. 4608, 1992 U.S. Dist. LEXIS 6239, at *13, 1992 WL 110995, at *3 (S.D.N.Y. May 6, 1992).   And see,  *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 94 (2d Cir. 2005) (punitive damages are not available for ordinary breach of contract as punitive damages are not to remedy private wrongs but to vindicate public rights), *cert. denied,* 126 S.Ct. 2968 (2006);  *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 386, 516 N.E.2d 190, 521 N.Y.S.2d 653 (1987) (punitive damages against the MTA would not vindicate

public rights).  Accordingly, plaintiffs' claims against the MTA for punitive damages must be dismissed.

In addition, when a declaratory relief sought is already encompassed within the substantive breach of contract claims, the separate declaratory judgment claim should be dismissed.  *CAMOFI Master LDC v. College P'ship,* 452 F.Supp.2d 462, 480-81 (S.D.N.Y. 2006);  *Miramax Film Corp. v. Abraham*, No. 01 CV 5202, 2003 U.S. Dist. LEXIS 21346, at *45, 2003 WL 22832384 (S.D.N.Y. Nov. 24, 2003).  And see, *Orion Pictures Corp. v. Showtime Networks (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1100 (2d Cir. 1993) ("Where a district court has before it a declaratory judgment action and a direct action containing all of the issues in the declaratory judgment action, and decides the common issues in the direct action, it may exercise its discretion to dismiss the declaratory judgment complaint.").  Accordingly, plaintiffs' declaratory judgment claims should be dismissed.

Furthermore, any other state claims by plaintiffs against the MTA would fail the notice of claim requirements and limitations of N.Y. Pub. Auth. Law § 1276.  *D'Andrea v. Long Island R. R. Co.*, 70 N.Y.2d 683, 512 N.E.2d 547, 518 N.Y.S.2d 964 (1987) (citing opinion below, 117 A.D.2d 10, 12-13, 501 N.Y.S.2d 891 (2d Dep't 1986));  N.Y. Pub. Auth. Law § 1276(2);  N.Y. Gen. Municipal Law § 50-e.  See also, *Adams v. New York City Transit Auth.*, 140 A.D.2d 572, 573, 528 N.Y.S.2d 638 (2d Dep't 1988);  *Laverpool v. New York City Transit Auth.*, 835 F.Supp. 1440, 1449 (E.D.N.Y. 1993), *aff'd*,  41 F.3d 1501 (2d Cir. 1994);  N.Y. Pub. Auth. Law § 1212(2) (notice requirements for New York City Transit Authority).

Finally, New York State has already denied any refund of the wage deductions at issue.  *Gammone v. Murphy*, 299 A.D.2d 551, 750 N.Y.S.2d 531 (2d Dep't 2002) (same actual Union, employer, contract, and wage deductions as the present case), *appeal dismissed,* 99 N.Y.2d 650 (2003).  Accordingly, the complaint as against the MTA should be dismissed.

**POINT IV**

**CLAIMS AGAINST THE MTA MUST BE
DISMISSED BECAUSE THE MTA IS THE
WRONG PARTY.**

Plaintiffs' claims are alleged against the plaintiffs' employer, which the Complaint mistakenly refers to as the MTA.  Plaintiffs' claims are all based upon an alleged breach of the Collective Bargaining Agreements between the plaintiffs' employer and the Union.  However, there is no question that plaintiffs are not employed by the MTA (but instead by the NYCTA)[3].  Furthermore, the MTA does not waive its defense of plaintiffs' failure to join an indispensable party.  Accordingly, plaintiffs' claims which all arise from agreements between the Union and plaintiffs' employer should therefore be dismissed as against the MTA.  *Majer v. Metropolitan Transportation Authority*, No. 90 Civ. 4608,1992 U.S. Dist. LEXIS 6239, at *5, 1992 WL 110995 (S.D.N.Y. May 6, 1992). Plaintiffs' conclusory allegations that the MTA acted in collusion with the Union cannot save plaintiffs' pleadings.  See, *e.g.*, *Thomas v. Roach,* 165 F.3d 137, 147 (2d Cir. 1999); Point II(b) *supra*.  See also, *New York Urban League v. New York*, 71 F.3d 1031, 1033-34 (2d Cir. 1995) ("The NYCTA is a legally separate public benefit corporation affiliated with the MTA.");  *Mason v. New York City Transit Auth.*, No. 04 Civ. 557, 2005 U.S. Dist. LEXIS 11101, at *21-22 (S.D.N.Y. June 3, 2005);  N.Y. Pub. Auth. Law § 1201(1).  And see, Point II(d), *supra*.

---

[3]    As already been shown, however, there is no basis for permitting plaintiffs to name NYCTA as a defendant since there is no viable claim which can be stated against plaintiffs' employer.  See, Points I - III, *supra*.  Furthermore, the time for amending the Complaint has passed.

**Conclusion**

Plaintiffs' First Cause of Action, misappropriation, and Second Cause of Action, conversion, must be dismissed as against the MTA.  Points I, II(b).

Plaintiffs' Third and Fourth Causes of Action do not state a claim against the MTA because they are solely against the Union.

Plaintiffs' Fifth Cause of Action, fraud, must be dismissed.  Points I, II(d).

Plaintiffs' Sixth Cause of Action, unjust enrichment, must be dismissed.  Points I, II(b).

Plaintiffs' Seventh Cause of Action, N.Y. Gen. Mun. Law § 92-a(2), and Eighth Cause of Action, N.Y. Labor Law § 193(1)(b), must be dismissed.  Points I, II(c).

Plaintiffs' Ninth Cause of Action, breach of contract and N.Y. Constitution Art.5, § 7 must be dismissed.  Points I, II(a), II(c).

Plaintiffs' Tenth Cause of Action, misappropriation, and Eleventh Cause of Action, conversion, must be dismissed as against the MTA.  Points I, II(b).

Plaintiffs' Twelfth and Thirteenth Causes of Action do not state a claim against the MTA because they are solely against the Union.

Plaintiffs' Fourteenth Cause of Action, fraud, must be dismissed.  Points I, II(d).

Plaintiffs' Fifteenth Cause of Action, unjust enrichment, must be dismissed.  Points I, II(b).

Plaintiffs' Sixteenth Cause of Action, N.Y. Gen. Mun. Law § 92-a(2), and Seventeenth Cause of Action, N.Y. Labor Law § 193(1)(b), must be dismissed.  Points I, II(c).

Plaintiffs' Eighteenth Cause of Action, breach of contract and N.Y. Constitution Art.5, § 7 must be dismissed.  Points I, II(a), II(c).

Plaintiffs' remaining claims, if any, also must be dismissed.  Points III, IV.

WHEREFORE, defendant Metropolitan Transportation Authority requests judgment dismissing the Complaint as against the MTA; together with costs, disbursements, and attorneys' fees and any other relief the Court deems just and proper; and that any amendment to the Complaint be rejected as untimely and futile.

Dated:          New York, New York
                January 19, 2007

                                        JAMES  B. HENLY
                                        General Counsel for the
                                        Metropolitan Transportation Authority
                                        347 Madison Avenue, 9th Floor
                                        New York, NY 10017

                                        /s/_____
                                        By:  Ching Wah Chin (CC 2850)
                                        Associate Counsel
                                        (212) 878-1037

                of counsel,
                Ching Wah Chin

# APPENDIX

Integrated Agreement Between New York City Transit Authority,
Manhattan and Bronx Surface Transit Operating Authority and
Transport Workers Union of America, Local 100
("IA")
Sections 1.11, B3, 2.1.A, 2.1.B  .......................................................................  A- 1

December 16, 2002 Memorandum of Understanding
("2002 MOU")
Section 4  ............................................................................................................  A- 8

December 2003 Agreement of the New York City Transit Authority to Assume the
Assets and Liabilities of the TWU-NYCTA-MaBSTOA Health Benefit Trust
("2003 Health Benefit Agreement")
Section 2  ............................................................................................................  A- 9

SECTION 1.11-  AUTHORITIES – HEALTH BENEFIT TRUST

A.       During the term of this Agreement, the Authorities jointly with the Union will continue the multi-employer welfare benefit trust, established on April 1, 1976, as a successor trust to the Transport Workers Union - New York City Transit Authority Health Benefit Trust and the Transport Workers Union - Manhattan and Bronx Surface Transit Operating Authority Health, Welfare and Death Benefit Trust.  The purpose of said multi-employer welfare benefit trust is to provide medical, surgical, or other health and death benefits for all hourly-rated employees of the Transit Authority in titles listed in Appendix A represented by the Union, and pensioners who retired from hourly titles represented by the Union at the time of their retirement and for all hourly rated and Union clerical employees of the Manhattan and Bronx Surface Transit Operating Authority in titles listed in Appendix B represented by the Union and pensioners who retired from hourly rated or Union clerical titles represented by the Union at the time of their retirement.

B1.     The Parties agree that the Welfare Benefit Trust shall maintain the current benefits through December 31, 2000. Up to that date, there shall be no requirement that the Welfare Benefit Trust maintain reserves or a fund balance.  Funds sufficient to pay claims incurred but not yet reported, as the term is understood by the principals, shall continue to be set aside.  However, reserves above that amount may be accessed by NYC Transit for any purpose.

B2.     After December 31, 2000, the Authorities will recommence making monthly defined contributions to the Welfare Benefit Trust Fund.   The actual per capita amount for each category of beneficiary shall be determined by the parties after no more than thirty (30) day period of discussion.  If there is no agreement, the per capita amount shall be determined by the Impartial Arbitrator.

14        A-1

B3.     Pursuant to the 1996 and 1999 Memoranda of Understanding, the Authorities will maintain the current level of benefits through December 31, 2000 on which date the Trust shall convert back to a defined contribution plan using a formula predicated upon the 1999 expenditures of the Trust as increased by fifty (50) percent of the total expenditure growth of the Trust in the year 2000. In addition to the foregoing contribution, the Authorities shall make a one time contribution to the Welfare Benefit Trust equaling one month's contribution for reserve purposes except as noted in the side letter agreement dated May 11, 1999 contained in appendix G of this Agreement.

> 1)     Effective January 1, 2001 and January 2, 2002 respectively, the Authorities will increase each contribution rate by six (6) percent.

> 2)     The Authorities shall further make additional annual contributions of $3.75 million dollars payable in equal installments on the same basis as the Authorities' normal contribution for the express purpose of enhancing benefits.

> 3)     The Authorities shall not be required to pay any monies to the Trust other than the payments provided for under this Section except for eligible Traffic Checkers as provided for in Section 7.0J.

C.     The Authorities shall be released and relieved of any and all obligations or other claims for payment to any health, medical, surgical, death, or other benefit plan for any of its Union represented hourly-rated employees in the titles listed in the aforementioned Appendix A, Union represented clerical titles in Appendix B, Traffic Checkers per Article VII and pensioners who retired from titles represented by the Union at the time of their retirement.

D.     The Trustees of the multiple employer welfare benefit trust shall have the power by unanimous vote of all the trustees, to increase, reduce, or otherwise change a plan or benefits within the same level of funds made available under this Section.

E.     Notwithstanding anything in this Section appearing to the contrary, the Trust benefits of pensioners below age 62 who have retired pursuant to the retirement program known as Chapter 529 of the Laws of 1994 shall be paid for as set forth in the award of Milton Rubin dated October 10, 1995 rendered pursuant to the agreement of the Parties executed July 26, 1994 (attached hereto as part of Appendix G-4). Effective January 1, 1997, the additional one (1) percent employee contribution made by participating members, pursuant to the award rendered by Arbitrator Milton Rubin on October 10, 1995, will cease.

A-2

ARTICLE II. – TRANSIT AUTHORITY – GENERAL

SECTION 2.1 – GRIEVANCE AND ARBITRATION PROCEDURES

A. DEFINITIONS

    1.    A Contract Interpretation Grievance is hereby defined to be a complaint on the part of any covered employee or group of such employees that there has been on the part of Management, non-compliance with or a misinterpretation of any of the provisions of this Agreement or of any written rule, or Policy/Instruction of the Authority governing or affecting its employees, or that any run or work schedule imperils the health or safety of employees. A Contract Interpretation Grievance shall not include any claim subject to the Disciplinary Grievance Procedure.

    2.    A Disciplinary Grievance is hereby defined to be a complaint on the part of any covered employee that there has been a violation of the employee's contractual rights with respect to a disciplinary action of a warning, reprimand, fine, suspension, demotion, and/or dismissal except that a "disciplinary grievance" shall not include the removal or other discipline of a probationary, provisional, part-time, or temporary employee. This provision shall not be construed to deprive a provisional employee of his/her right to use this procedure prior to suspension or termination from his/her permanent title.

    3.    A Medical Appeal Grievance is hereby defined to be a complaint on the part of any covered employee that would otherwise be subject to Sections 72 and/or 73 of the Civil Service Law that he or she has been improperly placed on such involuntary leave and the procedures contained herein shall be in lieu of any administrative procedure specified in Sections 72 and/or 73 of the Civil Service Law. A medical appeal grievance shall also include a challenge to a medical finding of full work by an employee suffering from (or allegedly suffering from) an ordinary disability or a challenge by an employee injured on duty to a medical finding of no work when an employee claims he/she can work.

B. CONTRACT INTERPRETATION GRIEVANCE PROCEDURES

    1.    A Contract Interpretation Grievance which is filed with the statement of facts that alleges a complaint as defined by sub-section A, Paragraph 1 above but which fails to specifically cite what the alleged violation is shall be returned to the filing party for correcting and refiling. Refiling shall be within five (5) days and such grievance shall be deemed as filed effective on the original filing date, except that the time period for processing such grievance shall commence at refiling.

    2.    A grievance which is amended at any step to effectively change the subject of the complaint shall be refiled as a new grievance.

    3.    Contract interpretation grievances as defined in subsection A, Paragraph 1 above, shall be processed and settled in the following manner:

33

A-3

a.        Step I

An employee or his/her Union representative shall be permitted within thirty (30) calendar days from the time a grievance arose to request in writing, by completing a form provided by the Authority, to be heard at the Departmental level by the Department Head or his/her designee.   The grievance shall be scheduled to be heard within thirty (30) calendar days after receipt of the written request by the employee's Department Head or designee.   The employee may be accompanied at this meeting by his/her Union representative.   The decision on the appeal will be rendered to the employee and his/her Union representative within fifteen (15) calendar days after the meeting.

Revenue shortage and loss grievances, sick leave grievances arising from denial by the Sick Leave Review Committee, and injury on duty differential grievances may be appealed directly to Step II bypassing Step I of this procedure.   Such grievances shall be scheduled for a Step II hearing within thirty (30) days from receipt of a written appeal.

Where three (3) or more employees in one department have a similar grievance, the Department Head or his/her designee shall order an informal hearing and render his/her decision within ten (10) days.

b.        Step II

In the event that the matter is not satisfactorily adjusted with the Department Head, the employee or his/her Union representative may, within five (5) days after the receipt of written notification from the Department Head of his/her decision, submit the dispute in writing, by completing a form provided by the Authority, to the Authority's Deputy Vice President, Labor Disputes Resolution or his/her designee. The appeal shall be scheduled to be heard within twenty-five (25) days after the receipt of the written request by the Deputy Vice President, Labor Disputes Resolution or his/her designee.   The Deputy Vice President, Labor Disputes Resolution or designee shall, within twenty (20) days after such hearing is closed, render his/her decision in writing.

Where a grievance concerning three (3) or more employees in one department is processed through the expedited Step I procedure set forth above, an appeal by the Union to Step II shall be scheduled to be heard within ten (10) days after the receipt of the written request by the Deputy Vice President, Labor Disputes Resolution or his/her designee, and a written decision shall be rendered to the Union within ten (10) days after the hearing is closed.

The Deputy Vice President, Labor Disputes Resolution may, at any time, on his/her own motion review any decision at Step I, and may overrule or modify said decision after first giving the employee or employees who are affected thereby, and his/her or their Union representative, an opportunity to be heard.

A-4

Grievances involving the "farming-out of work" may be filed directly at Step II after being reviewed and considered by the farming-out committee established in Section 1.13.

c.   Impartial Arbitration

If the Union representative is not satisfied with the decision on the contract interpretation grievance at Step II of the grievance procedure, the Union grievance representative, may file with the Impartial Arbitrator at any time within fifteen (15) days after said decision has been made at Step II, a demand that the Impartial Arbitrator give his/her opinion and make his/her determination with respect to the said grievance.   The Authority may also submit to the Impartial Arbitrator for his/her opinion and determination any complaint arising solely out of the interpretation, application, breach, or claim of breach, of the provisions of this Agreement.   The Impartial Arbitrator shall fix a date for the hearing on at least fourteen (14) days notice to the Authority and to the employee or his/her representative, at which the employee, or his/her representative, and a representative of the Authority, shall be on hand to present both sides of the controversy.

At the request of the Impartial Arbitrator, such witnesses, records, and other documentary evidence as may be required, shall be produced.

All witnesses shall take an appropriate oath or affirmation prior to testifying.

Awards will be issued in writing at the conclusion of each hearing day except where either party requests to file a brief or the arbitrator requests additional time to render a decision.  The parties shall agree upon the form to be utilized for these expedited awards.  On the date of the hearing, either party may request a written opinion to follow the expedited award.

When a written opinion and award is to be rendered, the Impartial Arbitrator shall mail a copy of his/her opinion and award to the Deputy Vice President, Labor Disputes Resolution and to the employee or his/her representative within five (5) days after the close of the hearing before him.  The determination of the Impartial Arbitrator upon matters within his/her jurisdiction, and submitted to him/her under and pursuant to the terms and conditions of this Agreement, shall be final and binding upon both parties.

The Impartial Arbitrator to serve as such from June, 2001 to December 15, 2002, shall be Richard Adelman, who has been selected by the parties to this Agreement.

If the office of Impartial Arbitrator should become vacant, the Authority and the Union will designate a new Arbitrator as soon as practicable.

A-5

d.      Expedited Arbitration

1.      Sick leave, shortage and differential grievances shall be processed, heard and determined through the instant expedited arbitration procedure.  The parties may mutually agree to have other cases processed through this procedure.  A differential grievance involving a major interpretation of the collective bargaining agreement may be submitted to the Impartial Arbitrator pursuant to the contract interpretation grievance procedure set forth above upon mutual agreement of the parties.  Disciplinary cases involving time and attendance where the recommended penalty is a ten day suspension or less shall be processed through the same arbitration procedures utilized for sick leave and differential cases after the Step II hearing.

2.      A mutually agreed upon Impartial Arbitrator(s) will be authorized to hear and decide those cases that the parties agree shall be heard pursuant to the expedited arbitration procedures.

3.      At the conclusion of each hearing date, the Impartial Arbitrator shall issue an Award for each case heard during that day.  Awards issued by the Arbitrator shall be final and binding.

4.      The Arbitrator shall issue a written Award, without a written opinion on the Expedited Arbitration Award Form.  Awards issued by the Arbitrator shall not establish a precedent and will not be used or referred to in the future by either party.

5.      Each party shall be represented by one person that it may choose and designate, and each party shall be limited to one person to testify or offer clarifying information.

6.      Each party shall inform the other party, in writing (stating name and case number), of its intention of having its witness present at least ten (10) working days prior to the date the case is to be heard.

7.      Each party shall have no more than twenty-five (25) minutes to present its case and each party shall have an additional five (5) minutes for rebuttal.  All documentary evidence must be submitted by the parties within the time set forth in this paragraph.

8.      Prior to the start of a hearing, each party shall be granted one postponement for cause.  Once either party has presented evidence in support of its case, there will be no adjournments or postponements of the hearing.

9.      The time and date of the hearing must be agreeable to the parties.  Two days of hearings per week shall be scheduled unless the parties deem it impractical or unnecessary to do so.

10.     The Arbitrator is prohibited from calling any witness, except those witnesses so designated in paragraph 5, to testify in the proceeding.

36      A-6

11.    There shall be no transcripts or electronic records made of the proceedings.

e.    Impartial Arbitrator

An Impartial Arbitrator, in rendering any opinion or determination, shall be strictly limited to the interpretation and application of the provisions of this Agreement, or of any written rule, or Policy/Instruction of the Authority governing or affecting hourly paid employees, and he/she shall be without any power or authority to add to, delete from, or modify any of the provisions of this Agreement, or of such rules or Policy/Instruction.  The Impartial Arbitrator shall not have the authority to render any opinion or make any recommendations:

1.    inconsistent with or contrary to the provisions of the applicable Civil Service Laws and Regulations;

2.    limiting or interfering in any way with the statutory powers, duties, and responsibilities of the Authority in operating, controlling, and directing the maintenance and operation of the transit facilities, or with the Authority's managerial responsibility to run the transit lines safely, efficiently and economically;

3.    with respect to modification of any wage rates provided in Section 1.10 hereof; or

4.    with respect to any disciplinary or medical appeal grievance.

A-7

4.    HEALTH BENEFITS

MTA NYCT will assume the obligations of the HBT and maintain the current level of benefits subject to the following plan adjustments:

      i.     Domestic partner coverage shall be added under the same rules applicable to non-represented employees of MTA NYCT.

      ii.    A Hi-Option rider will be offered to plan participants in the GHI network

      iii.   GHI/CBP co-pays shall be increased from $10/$30 to $15/$45.

      iv.   Prescription drugs shall be pursuant to a three tier formulary system with $0/$10/$15 (2x mail order) co-pays.

      v.    A prescription drug plan for pre-Medicare retirees shall be instituted at the level consistent with a first year cost of $10 million dollars. That level of benefits shall be maintained in the same fashion as the remainder of the plan.

      vi.   Mental health visits shall be increased to sixty (60) visits.

      vii.  Regular part time traffic checkers will receive the same health care benefits as provided to regular full time employees.

Effective upon full and final ratification and approval of this agreement by the parties all applicable agreements shall be amended to provide that the health benefits currently provided by the Health Benefit Trust, as amended above, shall be provided directly by the Authority.

The Union will be informed of and have input into any administrative changes that may impact upon those receiving benefits.

2

A-8

Section 2.    **Termination of the HBT**

The Parties hereby agree that, in accordance with Article 13 of the Trust Agreement, the HBT shall terminate and the separate legal identity and existence of the HBT shall cease effective as of July 31, 2003 at 11:59 pm. Upon the termination of the HBT, any Assets that are not used to satisfy Liabilities shall be applied exclusively to provide, either directly or through the purchase of insurance, life, sick, accident or other benefits to those individuals who would have been entitled to benefits under the terms of the HBT's Plan document if the HBT would have continued in existence following the Effective Date.

A-9

2

## CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2007, in addition to Electronically Filing, I caused a true and correct copy of the foregoing  Notice of Motion, Defendant MTA's Memorandum in Support of Its Motion to Dismiss, Defendant MTA's Statement of Undisputed Facts, and Chin Declaration, to be served upon:

>Abraham Borenstein, Esq.
>Attorneys for the plaintiffs
>292 Madison Avenue, 22nd Floor
>New York  NY  10017

>Martin Kurlander, Esq.
>Attorneys for the plaintiffs
>32 Court Street, Suite 602
>Brooklyn  NY  11201

>Kent Y. Hirozawa, Esq.
>Gladstein Reif and Meginniss
>Attorneys for union defendants
>817 Broadway
>New York  NY  10003

Dated:        New York, New York
              January 19, 2007

                                  /s/_____
                                  By:  Ching Wah Chin (CC 2850)
                                  Associate Counsel
                                  (212) 878-1037