# EXHIBIT D

Agreement of the New York City Transit Authority to Assume the Assets and Liabilities of the TWU-NYCTA-MaBSTOA Health Benefit Trust, dated December 2003 ("2003 Health Benefit Agreement")



# AGREEMENT OF
# THE NEW YORK CITY TRANSIT AUTHORITY
# TO ASSUME THE ASSETS AND LIABILITIES
# OF THE TWU-NYCTA-MaBSTOA
# HEALTH BENEFIT TRUST

THIS AGREEMENT (hereafter the "Agreement") is made this 1st day of August 2003 (the "Effective Date") by and among the Transport Workers Union of America, AFL-CIO, Transport Workers Union of America, Local 100, the New York City Transit Authority, the Manhattan and Bronx Surface Transit Operating Authority and the Trustees of the TWU-NYCTA-MaBSTOA Health Benefit Trust (collectively, the "Parties").

## RECITALS

WHEREAS, the Parties are signatories to the Agreement and Declaration of Trust (the "Trust Agreement") establishing the Transport Workers Union-New York City Transit Authority-MaBSTOA Health Benefit Trust, dated March 14, 1977 (the "HBT");

WHEREAS, the New York City Transit Authority (the "NYCTA"), the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), and the Transport Workers Union of America, Local 100, AFL-CIO (the "TWU") entered into a Memorandum of Understanding dated December 16, 2002 (the "CBA");

WHEREAS, Section 4 of the CBA provides, among other things, that the NYCTA will assume the obligations of the HBT;

WHEREAS, in order to effectuate the terms of the CBA, the Parties desire to simultaneously transfer the assets and liabilities of the HBT to the NYCTA and terminate the HBT in accordance with Article 13 of the Trust Agreement and applicable law; and

WHEREAS, the NYCTA desires to assume the assets and liabilities of the HBT to the extent described herein;

NOW THEREFORE, the Parties agree as follows:

Section 1.    **Transfer of Assets and Liabilities**

As of the Effective Date, the HBT shall transfer to the NYCTA all property, rights, remedies and assets of any kind whatsoever owned or possessed, directly or indirectly, by the HBT ("Assets") and the NYCTA and MaBSTOA will assume all obligations and liabilities of the HBT ("Liabilities").

Section 2.     Termination of the HBT

The Parties hereby agree that, in accordance with Article 13 of the Trust Agreement, the HBT shall terminate and the separate legal identity and existence of the HBT shall cease effective as of July 31, 2003 at 11:59 pm. Upon the termination of the HBT, any Assets that are not used to satisfy Liabilities shall be applied exclusively to provide, either directly or through the purchase of insurance, life, sick, accident or other benefits to those individuals who would have been entitled to benefits under the terms of the HBT's Plan document if the HBT would have continued in existence following the Effective Date.

Section 3.     Benefits of HBT Following the Effective Date

On and after the Effective Date, the NYCTA shall provide those health, welfare and related benefits furnished pursuant to the Trust Agreement that were available prior to July 31, 2003, as modified by Section 4 of the CBA (the "Benefits Program"), to those participants, dependents and beneficiaries who are eligible for such benefits under the terms of the Benefits Program. Nothing herein is intended to limit the rights of the parties to negotiate changes in benefits through the collective bargaining process.

Section 4.     Specific Responsibilities of the Parties

The NYCTA shall assume full fiduciary responsibility for the Assets and Liabilities after the Effective Date. Notwithstanding anything in Article 13 of the Trust Agreement to the contrary, after the Effective Date, the HBT Trustees shall no longer act as fiduciaries with respect to the Assets or Liabilities.

Section 5.     Representations and Warranties

The HBT Trustees warrant and represent that, to the best of their knowledge:

(a)     As of, and at all times prior to, the Effective Date: (1) the HBT has been determined by the Internal Revenue Service (the "IRS") to be exempt from income tax under Section 501(a) of the Internal Revenue Code of 1986, as amended (the "Code") as an entity described in Section 501(c)(9) of the Code, and the HBT Trustees are not aware of any fact that might result in the HBT being determined not to be exempt from such tax; (2) the HBT has been operated in material compliance with all applicable Code provisions; (3) the HBT has made or has caused to be made all material filings required to be made prior to the Effective Date with respect to: (i) the furnishing of all reports, documents and notices required to be provided to the HBT participants; and (ii) the applicable reports, documents and notices required to be filed with the New York State Department of Insurance (the "NYS DOI") and the IRS; (4) the program of benefits established under the Trust Agreement has been operated and administered in accordance with the requirements of all applicable law, including, without limitation, the Code, the Health Insurance Portability and Accountability Act of 1996, as amended, the Mental Health Parity Act of 1996, the Newborns' and Mothers' Health Protection Act of 1996, the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"), the Women's Health and Cancer Rights Act of 1998, the Uniformed Services Employment and Reemployment Rights Act

2

of 1994, as amended and the Family Medical Leave Act; and (5) the HBT is in material compliance with all other laws, ordinances, codes, rules, regulations, standards, judgments, decrees, writs, rulings, injunctions, orders and other requirements of all governmental, administrative or judicial entities applicable to it and any of its property.

(b)     The HBT is not under examination by the IRS, the NYS DOL, or any other federal, state, local or other government agency.

(c)     The HBT Trustees have furnished or made available to the NYCTA true and complete copies of all agreements in the possession of the HBT Trustees relating to the Assets and Liabilities that the NYCTA has agreed to assume pursuant to Section 1, hereof.

(d)     There are no other agreements or obligations of any kind whatsoever pursuant to which the HBT has material obligations, except those for which such obligations are reflected in and reserved against on the most recent audited Financial Statements of the HBT.

(e)     Except for the matter of Reilly v. Transport Workers Union, et al., there is no claim, action, suit, litigation, arbitration, investigation or proceeding pending (or threatened) against the HBT or any of its Trustees before or by any court, arbitrator, panel, agency or other governmental, administrative or judicial entity and no order, citation or other official action of any governmental, administrative or judicial entity is outstanding against the HBT.

(f)     Other than contributions that the HBT makes on behalf of its employees to the TWU-NYCTA MABSTOA Health Benefit Trust Profit Sharing Plan, any obligations the HBT has to make severance payments pursuant to the HBT's collective bargaining agreement with Local 153, and contributions the HBT makes to the Local 153 Pension Plan (including, without limitation, contributions necessitated by the minimum funding requirements of the Code or by the withdrawal liability provisions of the Employee Retirement Income Security Act of 1974, as amended), there are no employee benefit plans maintained by the HBT or to which it is obligated to contribute, including annuity, bonus, cafeteria, stock option, stock purchase, profit sharing, savings, pension, retirement, incentive, group insurance, disability, employee welfare, prepaid legal, non-qualified deferred compensation, including, without limitation, excess benefit plans, top-hat plans, deferred bonuses, rabbi trusts, secular trusts, non-qualified annuity contracts, insurance arrangements, non-qualified stock options, phantom stock plans, or golden parachute agreements, or other similar fringe benefit plans, and all other employee benefit funds or programs (within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974, as amended), covering employees or former employees of the HBT.

(g)     The HBT has no obligations or liabilities other than those set forth in the HBT's most recent audited Financial Statements and, since the issuance of the HBT's most recent audited Financial Statements, there have been no material changes (other than changes in the ordinary course of business and consistent with the past practices of the HBT) in the financial condition, assets, liabilities, business or property of the HBT, which in the aggregate would have a material adverse effect on the HBT.

(h)     The HBT has timely filed all federal, state, local, and foreign tax returns, reports and declarations required to be filed and have paid, or made adequate provision for the payment

3

of any taxes which are due. Each of the tax returns filed by the HBT correctly and accurately reflected the amounts of any taxes due. The HBT has neither given, nor been requested to give any waiver of any statute of limitations relating to the payment of taxes. There is no application pending with any taxing authority requesting permission for any changes that would affect a period after the Effective Date. The HBT Trustees know of no basis for a deficiency assessment for taxes against the HBT. The HBT is not subject to, nor has it received any letter of determination from the IRS of, a tax due under the Code that has not been satisfied.

(i)   As of the Effective Date and for the six years prior to the Effective Date, the HBT has continuously maintained in effect fiduciary liability insurance in an amount not less than $3,000,000 and has paid all required premiums in timely fashion.

Section 6.   **Fiduciary Insurance**

The NYCTA will procure fiduciary liability insurance coverage that will, for a period of three (3) years after the Effective Date, cover all acts and omissions in connection with the HBT prior to the Effective Date.

Section 7.   **Miscellaneous Provisions**

(a)   This Agreement shall be subject to such amendments as the Parties may mutually agree upon in writing. This Agreement may not be amended or modified orally.

(b)   No representations, warranties, covenants or conditions, expressed or implied, whether by statute or otherwise, other than as is set forth in this Agreement, have been made by the parties hereto. No oral understandings, oral statements, oral promises or oral inducements exist.

(c)   This Agreement shall be governed by, construed, regulated, enforced and administered in accordance with the laws of the State of New York applicable to contracts made and to be performed within the State of New York (without giving effect to the principles thereof relating to the conflict of laws).

(d)   This Agreement may be executed in any number of counterpart copies, each of which shall be deemed to be an original, but all of which shall be considered the same instrument.

(e)   Titles, headings and subheadings for sections and paragraphs are inserted for convenience of reference only, and this Agreement shall not be construed by reference to them. Wherever required by context, the singular of any word used in this Agreement shall include the plural and the plural may be read in the singular. Words used in the masculine shall be read and construed in the feminine where they would so apply.

(f)   Any person dealing with the NYCTA and the HBT may rely upon a copy of this Agreement (and any amendments thereto) certified to be true and correct by an officer of the NYCTA or by a Trustee of the HBT.

4

(g)     Anything in this Agreement or in any schedule, exhibit, attachment or other document executed in connection herewith (or any amendment hereof) to the contrary notwithstanding, no provision of this Agreement shall be construed so as to violate the requirements of the Code, or other applicable law. In the event that any provision of this Agreement shall be held by any court of competent jurisdiction to be illegal, void or unenforceable, such provision shall have no effect upon and shall not impair the enforceability of any other provision of this Agreement.

(h)     Any references in this Agreement to a section of the Code shall include a reference to any successor provision of the Code.

(i)     The failure by any party to enforce any provision or provisions of this Agreement shall not in any way be construed as a waiver of any such provision or provisions, nor prevent that party thereafter from enforcing each and every other provision of this Agreement.

(j)     This Agreement and all of the provisions hereof shall be binding upon and inure solely to the benefit of the Parties and their respective successors and assigns, and shall not be deemed to create any third party rights in other persons or entities.

(k)     The Parties agree to execute, make, acknowledge, and deliver such other documents and take such other actions as may be reasonably required to effectuate the purposes of this Agreement and to consummate the transaction contemplated hereby.

(l)     Any dispute, claim, or grievance arising from or relating to interpretation or application of this Agreement shall be submitted to arbitration administered by the American Arbitration Association under its Impartial Umpire Rules for Arbitration of Impasses Between Trustees of Joint Employee Benefit Trust Funds. The parties further agree to accept the arbitrator's award as final and binding on them.

(m)     In the event of any conflict between the terms of this Agreement, the Trust Agreement, or the CBA (or any collective bargaining agreement that supercedes any relevant portion of the CBA), the terms of the CBA (or such collective bargaining agreement that supercedes any relevant portion of the CBA) shall be controlling.

(n)     To the fullest extent permitted by law, the execution of this Agreement shall impose no personal liability on the HBT Trustees or on the NYCTA or MaBSTOA (or either entity's employees, agents, or representatives).

\*          \*          \*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed this 22nd day of December, 2003.

FOR: TRANSPORT WORKERS UNION OF AMERICA, AFL-CIO

By: _____  12/22/03
                                Date

FOR: LOCAL 100, TRANSPORT WORKERS UNION OF AMERICA

By: _____  12/18/03
                                Date

FOR: NEW YORK CITY TRANSIT AUTHORITY

By: _____  12/18/03
                                Date

FOR: MANHATTAN AND BRONX SURFACE TRANSIT OPERATING AUTHORITY

By: _____  12/18/03
                                Date

ACCEPTED BY THE BOARD OF TRUSTEES OF THE TWU-NYTCA-MaBSTOA HEALTH BENEFIT TRUST:

_____        _____
Roger Toussaint                   Ralph Agritelley

_____        _____
Ed Watt                           Harvey Poris

_____        _____
Neil Persaud                      Martin Schnabel