UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DANIEL P. D'ANTONIO, et al.,

                      Plaintiffs,

    -against-
                                                                 06 Civ. 4283(KMW)

METROPOLITAN TRANSPORTATION                OPINION & ORDER
AUTHORITY, NEW YORK CITY TRANSIT
AUTHORITY; TRANSPORT WORKERS
UNION OF AMERICA; AFL-CIO;
LOCAL 100; and ROGER TOUSSAINT
as President of the Transport Workers Union
Local 100; JOHN DOE and JANE DOE and
other persons to be named later as officials of
Transport Workers Union, AFL-CIO, Local 100,

                      Defendants.
------------------------------------------------------------x

WOOD, U.S.D.J.:

        Plaintiffs, employees of the New York City Transit Authority ("NYCTA") and members of Transport Workers Union of America Local 100 (the "Union"), bring this action against Defendants Metropolitan Transit Authority ("MTA"); NYCTA; Transport Workers Union of America ("TWU"); the Union; Roger Toussaint ("Toussaint"), President of the Union; AFL-CIO; and unnamed officials of TWU, AFL-CIO, and TWU Local 100 ("John Doe Defendants") (collectively, "Defendants"). Plaintiffs bring eighteen federal and state law claims, based on allegations that Defendants misappropriated certain monies that Plaintiffs contributed to two employee benefit programs. Plaintiffs claim that Defendants were obligated to use the contributions to pay for Plaintiffs' retirement healthcare benefits, but that Defendants instead used the monies for other purposes.

1

In 2008, the Court dismissed a number of Plaintiffs' claims.  Defendants now move for summary judgment on Plaintiffs' remaining claims.  MTA and NYCTA move for summary judgment on Plaintiffs' claims for unjust enrichment, and Defendant NYCTA moves for summary judgment on Plaintiffs' claims for breach of contract.  Defendants TWU, the Union, Toussaint, AFL-CIO, and John Doe Defendants (collectively, "Union Defendants") move for summary judgment on Plaintiffs' (1) state common-law claims for breach of duty of fair representation, misappropriation, conversion and bad faith, and unjust enrichment; (2) federal claims for breach of fiduciary duty in violation of Section 501 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501; and (3) state law claims for breach of fiduciary duty in violation of Sections 720 and 723 of the New York Labor Law.

For the reasons stated below, the Court GRANTS MTA's and NYCTA's motion for summary judgment, and GRANTS Union Defendants' motion for summary judgment.

**I.     Background**

   A.  Factual Background

Unless otherwise noted, the following facts are undisputed by the parties:

MTA and its subsidiary, NYCTA, are public authority and public benefit corporations, organized pursuant to the Public Authorities Law of the State of New York.  They are responsible for operating virtually all public transportation systems in New York City.  The Union is the exclusive recognized bargaining representative for certain employees of the NYCTA.  Plaintiffs are employees of NYCTA and members of the Union.

NYCTA and the Union periodically renegotiate a collective bargaining agreement (the "CBA") that governs the rights and obligations of NYCTA and the Union's members, with respect to the members' employment with NYCTA.

1. The 25/55 Plan

In 1994, the New York Legislature enacted legislation improving pension benefits for transit workers. The legislation – commonly referred to as the "25/55 Plan" – permits transit employees with twenty-five years of service to retire at age fifty-five with full pension benefits. N.Y. Ret. & Soc. Sec. L. § 604(b). Prior to the legislation, transit employees could not retire with full benefits until the age of sixty-two. When the legislation was passed, transit workers who elected to participate in the 25/55 Plan were required to contribute an additional 2.3% of their wages (on top of the 3% of wages they already contributed) to the New York City Employees Retirement System ("NYCERS") (the "NYCERS Contribution"). (Union Defs' 56.1 St., ¶ 6a.) NYCERS is system through which the employees of New York City public agencies receive pension benefits. (Id.) The New York Legislature eliminated the NYCERS Contribution in December, 2000. (Id.)

Plaintiffs claim that the NYCERS Contribution was required to pay for both Plaintiffs' pension benefits and their retirement healthcare benefits. (Pls' Resp. to Union Defs' 56.1 St., ¶ 6b.)

2. The Health Benefit Trust

The 25/55 Plan increased the cost of providing healthcare benefits to retirees. In 1994, therefore, NYCTA and the Union signed a document known as the "Open Offer," which was incorporated into the CBA. (Union Defs' 56.1 St., 7.) The Open Offer provided that transit employees participating in the 25/55 Plan would cover the increased healthcare costs by contributing 1% of their wages to the Health Benefit Trust (the "Trust Contribution").[1] (Union

---

[1] The Open Offer established only that Plan participants would make an additional contribution to the Health Benefit Fund to cover increased healthcare costs. The TWU Local 100 and NYCTA could not agree on the amount of that contribution, and thus the amount was set through arbitration. The arbitration set the contribution rate at .7% of wages through September 1996 and then increasing to 1%.

3

Defs' 56.1 St., ¶ 8.) At the time the Open Offer was signed, the Health Benefit Trust ("Trust") was the mechanism that provided healthcare benefits to transit employees and retirees. (Union Defs' 56.1 St., ¶ 7.) NYCTA made contributions to the Trust, which the Trust used to pay for employees' healthcare benefits. Plaintiffs argue that the NYCTA and the Trust were required to save the Trust Contribution to pay for Plaintiffs' retirement healthcare benefits. (Pls. Resp., ¶ 7.)

In 1996, NYCTA and the Union signed a Memorandum of Understanding ("1996 MOU") that amended the CBA by (1) eliminating the Trust Contribution; (2) placing a moratorium on the requirement that NYCTA make contributions to the Trust; and (3) eliminating the requirement that the Health Benefit Trust maintain a reserve or fund balance.[2] (Union Defs' 56.1 St., ¶ 10.) The 1996 MOU provided that during the moratorium on NYCTA contributions, the Trust could spend all of its assets to cover its immediate expenses. (Union Defs' 56.1 St., ¶ 11.) Plaintiffs contend that this provision did not permit the Trust to spend the proceeds of the Trust Contribution. (Pls' Resp., ¶ 11.)

In 2002, NYCTA and the Union signed a new MOU (the "2002 MOU") that provided that NYCTA would assume all obligations of the Health Benefit Trust. (NYCTA 56.1 St., ¶ 13.) In lieu of making payments into the Trust, NYCTA would provide a guaranteed defined benefit plan to all active transit employees and to retirees, paid for from NYCTA's general accounts. (Pls' Resp. NYCTA 56.1 St., ¶ 13.)

---

[2] The 1996 MOU refers to the "Welfare Benefit Trust," which was another name for the Health Benefit Trust. The 1996 MOU defines the "Welfare Benefit Trust" as the entity "referred to in Section 1.11 of the [CBA]." (Hirozawa Decl. Ex. 5.) Section 1.11 of the CBA refers to the Health Benefit Trust. (Hirozawa Decl., Ex. 6.)

4

Plaintiffs elected to participate in the 25/55 Plan. They paid the NYCERS Contribution and the Trust Contribution (collectively, the "Contributions"),[3] until each was eliminated. Plaintiffs are now either in, or preparing for, retirement.

B. Procedural Background

Plaintiffs brought this putative class action in 2004, alleging that Defendants misappropriated the Contributions that Plaintiffs, and thousands of other similarly-situated transit employees, made to NYCERS and the Health Benefit Trust from 1994 to 1996.[4] According to Plaintiffs, the NYCTA was required to save these Contributions to pay for Plaintiffs' retirement healthcare benefits. (Compl. ¶ 48.) Plaintiffs claim that Union Defendants promised Plaintiffs that the Contributions would be used to pay for healthcare benefits, but then permitted NYCTA and MTA to spend them on other expenses. (Compl. ¶¶ 50-57.) Plaintiffs assert that, because NYCTA spent the Contributions, Plaintiffs will not receive the health benefits to which they are entitled when they retire.

Plaintiffs raise eighteen federal and state law claims against Defendants. In 2007, Defendants moved to dismiss all of Plaintiffs' claims. In 2008, the Court granted MTA's and NYCTA's motion to dismiss all claims against them, except (1) a claim for unjust enrichment against both MTA and NYCTA; and (2) a claim for breach of contract against NYCTA. The Court granted Union Defendants' motion to dismiss certain claims, but did not dismiss (1) Plaintiffs' federal claim for breach of fiduciary duty, pursuant to 29 U.S.C. § 501; or (2)

---

[3] In their complaint, Plaintiffs actually allege that they made a 2.3% contribution to the "Health Benefit Trust Fund" and a 1% contribution to the "Active Benefit Fund." In their brief opposing summary judgment, Plaintiffs clarify that the Active Benefit Fund does not exist and that they made the 2.3% Contribution and the 1% Contribution.

[4] Plaintiffs only allege that Defendants misappropriated the Contributions made between 1994 and 1996, even though Plaintiffs made NYCERS Contribution until 2001.

5

Plaintiffs' state law claims for breach of duty of fair representation, misappropriation, conversion and bad faith, and unjust enrichment.

**II.     Analysis**

    A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate where the pleadings, affidavits, and disclosures that form the record establish that there is no "genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment should be denied "if the evidence is such that a reasonable jury could return a verdict" in favor of the non-moving party.  NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178-79 (2d Cir. 2008).  In deciding a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party and must draw all reasonable inferences in the non-moving party's favor.  In re "Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir. 2008).  The non-moving party, however, cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and quotations omitted).

    B.  MTA's and NYCTA's Motion for Summary Judgment

MTA and NYCTA move for summary judgment on Plaintiffs' claim for unjust enrichment, and NYCTA moves for summary judgment on Plaintiffs' claim for breach of contract.  The Court finds that no there are no genuine issues of material fact as to either claim, and that Defendants are entitled to summary judgment.

1. Unjust enrichment

Plaintiffs allege that MTA and the NYCTA unjustly enriched themselves by "effectively garnish[ing] wages of its employees . . . from the [Health Benefit Trust]."[5]

Plaintiffs cannot establish a claim for unjust enrichment based on the Health Benefit Trust. Unjust enrichment is a "quasi-contract claim . . . . [A]n obligation the law creates in the absence of any agreement." Goldman v. Metro. Life Ins. Co., 5 N.Y.3d 561, 572 (N.Y. 2005); see also D'Antonio v. Metro. Transp. Auth., No. 06 Civ. 4283 (KMW), 2008 WL 582354, at *7 (S.D.N.Y. Mar. 4, 2008). The evidence before the Court establishes that the Health Benefit Trust was created pursuant to a 1976 agreement between NYCTA and the Union. (Hirozawa Decl., Ex. 7, Agreement of Consolidation). It was governed by the CBA. (Menaker Decl., Ex. C, 1999 CBA, Sec. 1.11.) Plaintiffs must sue on the basis of these agreements if they believe that their rights with respect to the Health Benefit Trust have been violated. See D'Antonio, 2008 WL 58234, at *7. Accordingly, the Court GRANTS MTA's and NYCTA's motion for summary judgment on Plaintiffs' unjust enrichment claim.

2. Breach of contract

Plaintiffs claim that NYCTA breached the terms of the Open Offer, by spending the proceeds of the Trust Contribution, rather than saving them to pay for Plaintiffs' retirement healthcare benefits.[6] Defendants argue that amendments to the Open Offer permitted the Trust Contribution to be spent. Defendants have produced copies of the 1996 and 2002 MOUs, and a

---

[5] In the Complaint, Plaintiffs actually allege that MTA and NYCTA unjustly enriched themselves by garnishing the wages of employees from "the Active Benefit Fund." Plaintiffs have clarified that the Active Benefit Fund does not exist, and that they intended to name the Health Benefit Trust.

[6] In its 2008 Opinion and Order resolving Defendants' motions to dismiss, the Court inferred a claim by Plaintiffs against NYCTA for breach of the "25/55 CBA." See Id. at *7-8. Plaintiffs allege that the 25/55 CBA is a collective bargaining agreement that created the 25/55 Plan. The evidence before the Court, however, establishes that the 25/55 Plan was created pursuant to legislation passed by the New York State Legislature, not a CBA. Based on the Complaint, Plaintiffs' briefing, and the evidence before the Court, however, the Court construes Plaintiffs' claim as a claim for breach of the Open Offer.

2003 agreement (the "2003 Agreement") between NYCTA and the Union, which officially dissolved the Health Benefit Trust and assigned the Trust's assets to the NYCTA (collectively, the "Agreements").

The terms of the Agreements are clear, and the Court rules as a matter of law that NYCTA did not breach the Open Offer. The Open Offer was incorporated into the CBA. (Hirozawa Decl., Ex. 3, Open Offer, ¶ 6.) It is undisputed that the 1996 MOU amended the CBA by eliminating the Trust Contribution, and placing a moratorium on a requirement that the NYCTA make contributions to the Trust. The 1996 MOU provided that during the contribution moratorium, the Trust was permitted to spend the "the [Trust's] reserve or fund balances . . . including any funds associated with the 25/55 program" to pay for the Trust's general expenses. The proceeds from the Trust Contribution were "funds associated with the 25/55 Plan." The Open Offer instituted the Trust Contribution to cover the cost of healthcare benefits for 25/55 Plan participants. (Hirozawa Decl., Ex. 3, Open Offer, ¶ 1.) Accordingly, the 1996 MOU permitted the Trust to spend the proceeds of the Trust Contribution on its immediate expenses.

It is undisputed that the 2002 MOU eliminated the Trust, and provided that employees and retirees would receive a defined benefit plan, paid for from NYCTA's general accounts. Following this change, the 2003 Agreement formally eliminated the Health Benefit Trust, and relieved NYCTA of any obligation to make contributions to or maintain a balance in the Trust. The 2003 Agreement also assigned <u>all</u> of the Trust's assets to NYCTA. (Menaker Decl., Ex. F., Agreement of NYCTA to Assume the Assets and Liabilities of the Health Benefit Trust.) By 2003, therefore, the Trust no longer existed; NYCTA had absorbed all its assets, including any remaining assets from the Trust Contribution. Plaintiffs present no evidence indicating that the

Agreements were invalid.[7]  Accordingly, there is no genuine issue of material fact on Plaintiffs' breach of contract claim.  The Agreements relieved NYCTA and the Trust of any obligation to save the proceeds of the Trust Contribution to pay for healthcare retirement benefits.  Thus NYCTA did not breach the Open Offer by spending those proceeds.  The Court GRANTS NYCTA's motion for summary judgment on the claim.

### C.  Union Defendants' Motion for Summary Judgment

Union Defendants move for summary judgment on Plaintiffs' (1) state common-law claims for breach of duty of fair representation, misappropriation, conversion and bad faith, and unjust enrichment (claims 1, 2, 10, 11, 15); (2) federal claims for breach of fiduciary duty in violation of Section 501 of the LMRDA (claims 4 and 13); and (3) state law claims for violation of Sections 720 and 723 of the New York Labor Law (claims 4 and 13).  The Court finds that Defendants are entitled to summary judgment on all claims.

#### 1.  Plaintiffs' state common-law claims

##### a.  Breach of duty of fair representation

Plaintiffs raise two breach of duty of fair representation claims, (1) a claim alleging that Union Defendants breached their duty by permitting the NYCERS Contribution to be spent on pension benefits; and (2) a claim alleging that Union Defendants breached their duty by permitting the Trust Contribution to be spent on general healthcare expenses.

Plaintiffs' claims are barred by the statute of limitations.

---

[7]  Plaintiffs assert that the Agreements were improper, but do not explain their assertion or present any evidence supporting it.  Plaintiffs' unsupported assertion cannot create a genuine issue of material fact.  See W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990) (observing that a non-moving party cannot "escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture") (internal citations and quotations omitted).

9

i.  Statute of Limitations

Plaintiffs' breach of duty of fair representation claims are subject to a four-month statute of limitations. Plaintiffs are public employees within the meaning of the Taylor Law, the New York statute governing the rights and obligations of public employee unions. N.Y. Civ. Serv. Law §§ 201-204. Plaintiffs' claims arise under Section 209-a of the Taylor Law, which establishes that public employee unions owe a duty of fair representation to their members. N.Y. Civ. Serv. Law § 209-a. Claims pursuant to Section 209-a are governed by the four-month statute of limitations found in Section 217 of the New York CPLR. N.Y. CPLR § 217(2)(b); Schermerhorn v. Metro. Transp. Auth., 156 F.3d 351, 353 (2d Cir. 1998). Pursuant to Section 217 of the CPLR, a claim for breach of duty of fair representation must be brought within four months of (1) the date the employee knew or should have known that the breach occurred; or (2) the date the employee suffered actual harm, whichever is later. Schermerhorn, 156 F.3d at 353.

Plaintiffs argue that the Court should apply New York's "continuing wrongs" rule to toll the four-month statute of limitations. Pursuant to the "continuing wrongs" rule, "certain wrongs are considered to be continuous wrongs, and the statute of limitations, therefore, runs from the commission of the last wrongful act." Statistical Phone Philly v. NYNEX Corp., 116 F. Supp. 2d 468, 484 (S.D.N.Y. 2000) (internal quotation marks omitted).

ii.  Application

Plaintiffs filed the original complaint in this action on July 6, 2006. Plaintiffs' claims are time-barred, even if the Court applies the "continuing wrongs" rule.

a.  NYCERS Contribution claim

In order to apply the statute of limitations to Plaintiffs' claim, the Court first must address Plaintiffs' contention that the NYCERS Contribution was intended to pay for both pension

10

benefits and healthcare benefits. Plaintiffs do not point to any evidence in the record supporting this contention. Rather, the undisputed facts and evidence before the Court establish that the Contribution was intended to pay only for pension benefits. It is undisputed that the 25/55 Plan legislation required transit employees to contribute 2.3% of their wages to NYCERS. It is also undisputed that NYCERS provides only pension benefits, and that, at the time the 25/55 Plan was enacted, retirement healthcare benefits were provided through the Trust. The 25/55 Plan legislation does not require that part of the NYCERS Contribution be directed to the Trust or otherwise used to pay for healthcare benefits. The legislation does not even mention the Trust or healthcare benefits. Given this evidence, Plaintiffs' unsupported contention cannot create a material issue of fact as to the intended use of the NYCERS Contribution. Accordingly, the Court finds that the 25/55 Plan required that the NYCERS Contribution be used to pay for pension benefits, not healthcare benefits.

Because the 25/55 Plan established that the NYCERS Contribution would be used to provide only pension benefits, Plaintiffs knew or should have known by July 26, 1994, the day the 25/55 Plan was enacted, that their NYCERS Contributions would not be saved to pay for healthcare benefits. The harm Plaintiffs allege to have suffered is that their NYCERS Contributions were not saved to pay for their healthcare benefits. The NYCERS Contributions were never saved to pay for such benefits. Plaintiffs, therefore, suffered this harm from the moment they enrolled in the 25/55 Plan and began paying the Contribution.[8] The parties have not presented evidence of the date each Plaintiff enrolled in the Plan. The NYCERS Contribution was eliminated on December 15, 2000, however, so no Plaintiff could have begun

---

[8] Plaintiffs argue that they did not suffer harm until they were preparing to retire and were told that the Contributions were not available to pay for healthcare benefits. This is the date that Plaintiffs discovered the harm. They suffered the harm, however, from the day they began paying the NYCERS Contribution, which went directly to NYCERS and was never saved to pay for Plaintiffs' healthcare benefits.

11

making contributions after that date. Plaintiffs should have filed their claim by no later than April 15, 2000. Accordingly, Plaintiffs' claim was filed after the statute of limitations had run.

Plaintiffs' claim is time-barred even if the Court applies the "continuing wrongs" rule. Plaintiffs allege that Union Defendants breached their duty of fair representation by permitting the proceeds from the NYCERS Contribution to be spent on pension benefits. The 25/55 Plan legislation required the Contribution to be used for pension benefits. The only way in which Union Defendants "permitted" the New York Legislature to enact this requirement was by supporting and lobbying for the legislation on behalf of the Union's members. Union Defendants did not conduct any lobbying past the date the 25/55 Plan was enacted. Accordingly, to the extent that lobbying was a "wrongful act," the last "wrong" would have occurred no later than July 26, 1996. Under the "continuing wrongs" rule, therefore, Plaintiffs should have brought their claim by no later than November 26, 1996.

Plaintiffs' claim based on the NYCERS Contribution is time-barred.

b. Trust Contribution claim

Plaintiffs filed their claim based on the Trust Contribution after the statute of limitations had expired. The 1996 MOU, which Plaintiffs reviewed and ratified, specifically permitted the Trust to spend the Trust Contribution on general healthcare expenses. Plaintiffs, therefore, knew or should have known that their contributions would not be saved to pay for retirement healthcare benefits, by no later than September 18, 1996, the date the MOU was signed.

As with the NYCERS Contribution, Plaintiffs allege to have suffered harm because their Trust Contributions were not saved to pay for their healthcare benefits. Plaintiffs suffered this harm as soon as the Trust Contributions were spent. The 1996 MOU permitted NYCTA to spend the Contributions. The 2003 Agreement eliminated the Health Benefit Trust, and assigned

its assets to NYCTA. Any funds in the Trust were either spent or assigned to NYCTA between September 18, 1996, when the 1996 MOU was signed, and December 22, 2003, when the 2003 Agreement was signed. Plaintiffs, therefore, would have suffered the harm they allege by no later than December 22, 2003, and thus should have brought their claim by no later than April 22, 2004. Accordingly, Plaintiffs' claim was filed after the statute of limitations had run.

Applying the "continuing wrongs" rule does not save Plaintiffs' claim. Plaintiffs allege that Union Defendants breached their duty of fair representation by permitting the Trust Contribution to be spent on general healthcare expenses. Union Defendants committed this alleged breach by entering into the 1996 MOU and the 2003 Agreement, which dissolved the Health Benefit Trust and assigned its assets to NYCTA. Thus, the last "wrong" would have occurred on December 22, 2003, when the 2003 Agreement was signed.[9] Plaintiffs should have brought their claim by April 22, 2003. Plaintiffs' claim is time-barred even if the Court applies the "continuing wrongs" rule.

Accordingly, Plaintiffs' claims for breach of duty of fair representation are time-barred. The Court GRANTS Union Defendants' motion to dismiss the claims.

### b. Other state common-law claims

The four-month statute of limitations in CPLR Section 217 also bars Plaintiffs' state common-law claims for misappropriation, conversion and bad faith, and unjust enrichment.

Under New York law, if a plaintiff suing for breach of duty of fair representation raises additional common law claims based on the same factual allegations as the fair representation

---

[9] Plaintiffs assert that a new wrong was committed each time the Trust or NYCTA spent a portion of the Trust Contribution. This may be true if Plaintiffs were asserting a claim against the Trust or NYCTA, the entities that actually spent the proceeds of the Trust Contribution. With respect to the Union Defendants, however, Plaintiffs claim only that Defendants permitted the Trust and NYCTA to spend the proceeds from the Contribution. Union Defendants committed this alleged breach only twice: when they signed the 1996 MOU, which permitted the Trust to spend the funds; and when they signed the 2003 Agreement, which assigned any remaining funds to NYCTA.

claim, the additional claims are subject to the four-month statute of limitations.  See Roman v. City Employees Local 237, 300 A.D.2d 142, 142, 753 N.Y.S.2d 48, 49 (1st Dep't. 2002); Dolce v. Bayport-Blue Point Union Free School Dist., 286 A.D.2d 316, 316-17, 728 N.Y.S.2d 772, 772 (2d Dep't. 2001); Clissuras v. City of New York, 131 A.D.2d 717, 718, 517 N.Y.S.2d 39, 40 (2d Dep't. 1987).  The rationale for this rule is that the plaintiff should not be permitted to characterize a claim for breach of duty of fair representation as a different claim, in order to avoid the four-month time bar.  See, Roman, 300 A.D.2d at 142, 753 N.Y.S.2d at 49 ("The expedient of characterizing a claim for breach of the duty of fair representation as one for breach of contract is unavailing to avoid the four-month limitations period . . . .")

Here, Plaintiffs' claims against Union Defendants for misappropriation, conversion and bad faith, and unjust enrichment rest on the same factual allegations as Plaintiffs' breach of duty of fair representation claims.  The gravaman of all of these claims is that Union Defendants promised Plaintiffs that the Contributions would be used to pay for early retirement healthcare benefits, and then permitted NYCTA to use the Contributions for other expenses.[10]  Accordingly, the additional claims are subject to CPLR Section 217's four-month statute of limitations, and are time-barred for the same reasons as the breach of duty of fair representation claims.  The Court GRANTS Union Defendants' motion for summary judgment on these claims.

###  2. Federal claim pursuant to Section 501 of the LMRDA

Union Defendants are entitled to summary judgment on Plaintiffs' claim for breach of fiduciary duty in violation of Section 501 of the LMRDA, 29 U.S.C. § 501.

---

[10]   In their brief opposing summary judgment, Plaintiffs argue that the breach of duty of fair representation claim is also based on Union Defendants' refusal to represent Plaintiffs in a dispute against NYCTA and MTA over the allegedly misappropriated Contributions.  The Complaint, however, does not allege that Union Defendants refused to represent Plaintiffs, or even that Plaintiffs requested Union Defendants' assistance.  Plaintiffs cannot introduce such allegations through their brief.  The Complaint alleges only that Union Defendants told Plaintiffs that the Contributions would be used to pay for healthcare benefits, and then permitted NYCTA to use the Contributions for other purposes.  All of Plaintiffs' state common-law claims, including their claim for breach of duty of fair representation, are based on these allegations.

Section 501(a) of the LMRDA provides that individual union members have a duty to "hold [the union's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend [the money] in accordance with [the union's] constitution and bylaws . . . ." 29 U.S.C. § 501(a). Section 501(b) provides a cause of action against individual union officers who violate this duty, but not against the union itself. 29 U.S.C. § 501(b); Commer v. American Fed'n., State, County and Mun. Employees, 390 F.3d 203, 204 (2d Cir. 2004). A Section 501 claim is available only if a union official has breached a fiduciary duty owed with respect to the union's money and property; "it is not a catch-all provision under which union officials can be sued on any ground of misconduct." Head v. Brotherhood of Ry., Airline and S.S. Clerks, Freight Handlers, Exp. and Station Emp., 512 F.2d 398, 400 (2d Cir. 1975) (internal citations and quotations omitted).

Plaintiffs cannot establish a Section 501 claim against any of the Union Defendants. Defendants TWU, the Union, and AFL-CIO are unions, not union officials, and thus cannot be sued pursuant to Section 501. The individual defendants – Defendant Toussant and the John Doe Defendants – can be sued pursuant to Section 501. Plaintiffs do not allege, however, that these Defendants breached a fiduciary duty owed with respect to the Union's money or property. Plaintiffs allege that the Union permitted NYCTA to misappropriate money that Plaintiffs contributed to NYCERS and the Health Benefit Trust. This money belonged first to Plaintiffs, and then to NYCERS and the Health Benefit Trust. There is no evidence on the record indicating that the money was ever property of the Union. Accordingly, the Court GRANTS Union Defendants' motion for summary judgment on Plaintiffs' Section 501 claims.

       3.   <u>State law claims pursuant the Sections 720 and 723 of the N.Y. Labor Law</u>

Defendants are entitled to summary judgment on Plaintiffs' claims for breach of fiduciary duty in violation of Sections 720 and 723 of the New York Labor Law.

Section 720 of the New York Labor Law provides that "union officers and agents have a fiduciary duty to serve the members of the union honestly and faithfully." N.Y. Labor Law § 720. Sections 722 and 723 prohibit union officers from having or acquiring any pecuniary or personal interests that conflict with their fiduciary obligations, or engaging in any business or financial transactions that conflict with those obligations. In particular, Section 723(f)-(g) prohibit officers from lending or investing union funds in particular ways, without authorization from the union. N.Y. Labor Law § 723(f)-(g). Section 725 provides a cause of action against union officers who violate any of the obligations established in Sections 722 and 723.

There is no evidence on the record indicating that Union Defendants have engaged in conduct prohibited by Sections 722 or 723 of the N.Y. Labor Law. Plaintiffs allege that Union Defendants violated (1) Section 720 by "violating their duty . . . to hold [the Union's] money properly solely for the benefit of the union and its members;" and (2) Section 723 by "lending or investing funds of the labor organization held for the 25/55 Plan, directly or indirectly, in the . . . MTA." (Compl. ¶ 75.) As discussed with respect to Plaintiffs' Section 501 claim, the only funds at issue in this action did not belong to the Union. Accordingly, the Court GRANTS Union Defendants' motion for summary judgment on Plaintiffs' Section 720 and 723 claims.

### III.   <u>Conclusion</u>

For the reasons stated above, the Court GRANTS Defendants MTA's and NYCTA's motion for summary judgment (D.E. # 107), and GRANTS Union Defendants' motion for summary judgment (D.E. # 109).

The Court orders the Clerk of the Court to close this case; any pending motions are moot.

      SO ORDERED.

DATED:    New York, New York
               March 30, 2010

                                              _____
                                              KIMBA M. WOOD
                                              United States District Judge